[Civ. No. 14853.    Second Dist., Div. Three.    Oct. 26, 1945.]

FARAH A. SPRAGUE, Respondent, v. FRANK F. FAUVER, Appellant.

Gordon M. Gale for Appellant.

Maurice Levy, Jr., and Caryl Warner for Respondent.

DESMOND, P. J.—Defendant appeals from a judgment in the sum of $2,416 assessed against him by the court in a non-jury trial for violation of the terms of a written lease. It appears that he bases his appeal on insufficiency of the evidence to support the findings and judgment based thereon.

By an instrument, dated July 27th, 1940, and signed by both parties, the plaintiff leased to the defendant certain premises in the county of Los Angeles described as "7914 Atlantic Boulevard, to be used for the purpose of conducting and carrying on the business of dealing in food and drinks." At that time, and for a short time previously, the defendant had been a tenant from month to month. The record indicates that there was contained in the leased premises equipment for a restaurant, consisting of a counter, stools and other furnishings and fixtures. The lease was granted for a term of three years from August 1, 1940, to July 31, 1943, at a cash rental of $31 per month. Attached to the lease was a rider reading, in part, as follows:

"As part consideration for this lease, said lessees covenant and agree to make certain alterations and improvements on said premises at their own expense, which said alterations and improvements are as follows: Alter front of building, place new awnings thereon, add another toilet and a new addition to present building which shall be finished in conformity with the present building, place a cement floor in new addition and a cement slab from the front of building to sidewalk, all which said improvements shall be entirely paid for by said lessees and said lessees covenant and agree to pay for same and will obtain receipts and releases in full for all labor and materials and will hand same over to said lessor within thirty (30) days after the completion of said improvements; said lessees will indemnify and save harmless said lessor from payment of any part of the expense of said labor and improvements. Any breach of this condition shall be deemed a default under the trems of this lease and shall constitute a cause of action for cancellation of this laese by said lessor."

Additional provisions of the lease bound the lessee not to

commit waste upon the premises and to hold the lessor harmless from any loss or damage from the use or misuse of the premises by the lessee; also bound the lessee "At the expiration of said term, or any sooner determination of this lease, to quit and surrender possession of said premises, and its appurtenances, to lessor in as good condition as reasonable use and wear will permit, damage by the elements or other casualty excepted."

Shortly after the expiration of the lease plaintiff filed this action on September 1, 1943. It was based upon the claimed violation of the provisions which we have mentioned. Count I sought the recovery of $93 due for rent for the last three months of the lease. Count II alleged that the plaintiff had sustained damages in the sum of $1,170 by reason of the failure of the defendant to make the improvements and alterations mentioned in the lease. Count III charged that waste was committed in that the defendant destroyed a wall on the premises, broke windows thereon, tore out booths and tables, removed part of a counter, removed fixtures in the bathroom and damaged walls of the building. The plaintiff sought to recover on that count the sum of $500. The complaint closes with Count IV, charging that the defendant carried away fixtures and furnishings, consisting of variously described items of equipment for a restaurant and including a stove. The fourth count alleges damages suffered in the sum of $777.30. The defendant filed a cross-complaint claiming there was due him the sum of $750 for labor performed and materials furnished in and about the premises of the plaintiff at 7914 Atlantic Boulevard.

The court found that the essential allegations of all counts of the complaint were true and that the cross-complainant was entitled to take nothing by reason of his cross-complaint. Judgment was awarded to the plaintiff in the sum of $2,166 as damages, together with attorneys' fees in the sum of $250, provision for which is made in the lease, making a total of $2,416.

It appears from the findings that the court estimated the items of damage as follows: The rent for the last three months of the lease, as claimed, $93; for failure to carry out the terms of the lease providing for an addition and various other changes mentioned in the rider to which we have referred, the sum of $1,170, as claimed in Count II; for waste, $354 instead of $500, the amount claimed; for violation of the

provisions of the lease requiring surrender of the premises and its appurtenances in good condition, the sum of $549 "rather than the sum alleged." In the same finding the court determined that the stove, above mentioned, did not belong to the plaintiff.

It appeared from the evidence that in the early days of the lease the defendant made a feeble effort to carry out the provisions of the rider, four photographs being introduced which indicated that he constructed a two-room addition but left it unfinished and failed to make other changes or additions which he undertook to carry out as part payment for his right to occupy the premises. There is no question that he abandoned the contemplated work shortly after the lease was signed, and left it standing in an uncompleted condition for the balance of the term. In the meantime, he sublet the premises at certain times for a rental of $45 per month. The evidence indicates that a few months before his term expired defendant's wife, acting in his behalf, removed the articles of personal property that had been used in the conduct of the restaurant business and which belonged to the plaintiff. The four photographs above mentioned were introduced as a single exhibit, and not being numbered or otherwise identified, we must look to the record to ascertain what view of the premises they actually portray. One of these photographs plainly shows the front of the building apparently in the condition in which it was at the time that the lease became effective. We say this because the plaintiff testified, when shown one of the photographs, that it was a picture of the front of the building, and that in the latter part of July, but before the 27th, she met the defendant in front of the premises and discussed with him the changes which he had in contemplation and which they had previously discussed. She was accompanied at this meeting by a Mr. Rankin, who took part in the discussions and finally advised the plaintiff to lease her property to the defendant at a low rental of $31 "because he was going to make these extensive improvements." Plaintiff testified that at that time "he [the defendant] was in the front of the building putting that cement between the building and the sidewalk when we drove up and had a talk with him." Upon being asked whether there was any tar paper or chicken wire placed on the building at that time, she answered affirmatively, saying "The front part of the building, it was a frame building and he

had put in chicken wire and was plastering it, the front part, he started immediately to improve the front." The photograph in question shows a cement strip in front of the building and also shows that the front of the building has a stucco finish. Plaintiff also testified as follows: "They said they would like to change the front and then put in a cement floor in the front from the building to the sidewalk, they would like to change the knotty pine—fix up the restaurant into knotty pine, they would like to extend 20 feet to the storeroom and remove the partition between the storeroom and the restaurant and put a cement floor there and finish it in knotty pine and they would like to add two more bedrooms in the back, also finish in knotty pine and put a toilet in the back and stucco the entire building, the new as well as the old one, stucco to conform, to look alike." The other three photographs show various views of the uncompleted addition, the walls of which show chicken wire and plaster construction. We believe that the trial judge, having these photographs before him and the testimony relative thereto, was justified in determining that the entire building, new and old, was to have been stuccoed and that this, together with completion of other structural items agreed upon by the parties, would have secured the conformity which was required by the terms of the lease.

▓ Since the improvements, changes and additions called for by the terms of the rider were not completed, the plaintiff was justified in securing their completion at reasonable prices and calling upon the defendant in an action at law to meet that expense. (Civ. Code, §§ 3300 and 3359; *Fabian* v. *Lammers* (1906), 3 Cal. App. 109 [84 P. 432].) Upon plaintiff's testimony, based upon written memoranda produced in court, the court found that the cost of the improvements, changes and additions equalled $1,170; the cost of repairs for the waste committed equalled $354; and also found that the plaintiff was entitled to recover $549 as the value of the restaurant equipment and other fixtures removed from the premises. Appellant raises no question about the justice of the remaining item of damages, $93, admitting "that the evidence discloses . . . the defendant did not pay the rental for the months of May, June and July, 1943, in the sum of $31 per month."

Although defendant testified that he did not sign the lease in question, his counsel now admits in his brief that the

evidence discloses that he did sign. ▮ The evidence also discloses, we may add, that the items of damage awarded by the court were amply substantiated by the testimony submitted, for as respondent states in her brief, "the items charged to appellant were either provided for. in the alteration provision of the lease, or constituted necessary repair of damage and waste committed by appellant. No charge was made for one water heater, or for the partition from the restaurant proper, or for switching two windows about, or for the knotty pine interior. These items were either not included in the $1,659.00 figure expended by respondent, or the items if included were deducted . . . ." The $1,659 figure mentioned was really $1,659.28, the total amount expended by plaintiff according to the itemized list which she used as a reference when testifying. Certain items in that list amounting to $135 the court did not allow, not being properly chargeable to this lessee, but the balance, $1,524, the court did allow, allocating $1,170 to the cost of alterations, including the addition, and $354 to repairing damage done to the premises. So far as this item of waste is concerned the plaintiff gave a vivid picture of the condition of the interior of the building at the time she visited it in May of 1943. In the preceding month she had found all the fixtures in place, but in May, according to her testimony summarized in her brief, "the partition that was taken down from between the storeroom and the restaurant was all torn down, and there was no plumbing left in any part of the building either in back or in front; the floor was dirty and broken up; the cement was all broken; the plaster in the bedroom was all full of holes and had to be replastered; the bathroom where respondent had had a wash bowl was removed and a door had been put in its place, and the plaster was all off the bathroom, and had to be replastered; the screens were all off the windows and were torn; and three windows were broken."

In regard to the cost of replacing the appurtenances which were removed by the tenant, the plaintiff testified that she had made a list of the missing items, had taken it to a prominent dealer in second hand fixtures and had obtained from him a quotation on the value of each item. She produced that list in court and referred to it in advising the court of the total cost. Her tabulation amounted to the sum of $777.30, but the court reduced that figure by $228.30 in awarding her judgment for the cost of the replacement in the sum of $549.

We note the appellant's general statement, which is not supported by argument, that the court ruled erroneously upon the admission and rejection of evidence, but we find no error in this regard.

It remains for us to dispose of appellant's claim that an additional clause in the rider which was attached to this lease and to which we have not heretofore referred, constituted an agreement for liquidated damages. This section of the rider reads as follows: "The said Lessor, provided that said improvements are completed and paid for by said lessees within six months from date hereof will give credit to the said lessees for the sum of $117.90 on the last four months rent of said lease, if said lessees are still in possession and operating said premises and have not otherwise made default of any of the other terms and conditions of this lease but if the said lessees shall have assigned said lease or sublet the premises with the consent of the said lessor as herein provided, then the assignees or sublessees shall be only entitled to credit of the last months rent of said term amounting to the sum of thirty-one dollars and no more." One who relies for recovery upon a stipulation for liquidated damages must allege and prove the circumstances that bring the case within the rule set up in section 1671, Civil Code (*Kelly* v. *McDonald* (1929), 98 Cal.App. 121 [276 P. 404]). This the appellant failed to do and that is not surprising considering the language used in the rider. The provision we have just quoted does not constitute an agreement to pay the sum of $117.90 as liquidated damages. It is merely a provision for the payment of a bonus under the conditions stated, none of which were fulfilled.

Judgment affirmed.

Shinn, J., and Wood (Parker), J., concurred.