[Civ. No. 25866. Second Dist., Div. Two. Dec. 6, 1962.]

JOSEPH PESKIN, Plaintiff and Appellant, v. DARRYL W. HERRON et al., Defendants and Respondents.

. . .

Wyman, Finell & Rothman, Marvin Finell and Gerald M. Bazar for Plaintiff and Appellant.

Gold, Herscher & Fox, Daniel M. Herscher and Lessing E. Gold for Defendants and Respondents.

FOX, P. J.—Plaintiff appeals from a judgment in his favor in the sum of $573.01 and attorney fees of $114.60 arising out of a contract for the factoring of accounts receivable, the performance of which contract was guaranteed by the defendants.

Plaintiff, doing business as Aetna Factors Company, was in the business of factoring accounts receivable. On December 13, 1957, plaintiff entered into an agreement with Mansion House Furniture Co., Inc., for the factoring of the latter's accounts receivable. This agreement was supplemented by a letter bearing the same date which provided that plaintiff would loan Mansion House up to $35,000 to cover Mansion House's cash needs. The defendants, Darryl W. Herron, Judi Parks Herron and William Parks, executed an agreement whereby they guaranteed performance by Mansion House of its covenants, conditions and obligations under the factoring agreement. It is this guaranty agreement upon which the liability of defendants is sought to be established.

Mansion House agreed that if any unapproved account was not paid by the debtor when due, Mansion House would repurchase the account at the option and upon the demand of plaintiff. Mansion House represented to plaintiff that no dispute existed or would exist between any debtor and Mansion House as to the indebtedness represented by the invoice of the account. Mansion House also agreed to repurchase the accounts upon the occurrence of certain other events not here relevant.

Plaintiff's obligation under the factoring agreement was to pay to Mansion House the full face value of the invoice, less the customer's discount, if any, and less the factoring charge of $2\frac{1}{2}$ per cent of the gross purchase price. Plaintiff also retained 20 per cent of the gross purchase price as a reserve.

During the period between December 13, 1957, and January 30, 1958, Mansion House sold to plaintiff 22 schedules of accounts receivable totaling $44,869.24. In addition, plaintiff loaned Mansion House $24,283.96, receiving a promissory note secured by a deed of trust. On May 29, 1958, plaintiff's accounts receivable with Mansion House showed a debit balance of $9,189.61. This sum represented the accounts receiv-

able that plaintiff had purchased from Mansion House pursuant to the factoring agreement which were either disputed accounts or unapproved accounts which had not been paid when due. (Plaintiff subsequently collected an account in the sum of $19.95.) Mansion House refused to repurchase these uncollected accounts or make any payment thereon. Plaintiff made a demand for payment on the defendants which was refused.

On May 29, 1958, there was a credit balance of $8,597.10 in plaintiff's reserve account and a debit balance (representing uncollected accounts receivable) in the accounts receivable account of $9,189.61. On that day, the notes receivable account had a balance of $24,283.96.

On the same day, plaintiff's bookkeeper credited the accounts receivable account with the sum of $9,189.61, leaving a zero balance in that account. A corresponding entry was made in the reserve account in the same sum, leaving a debit balance therein of $592.51. On June 24, 1958, plaintiff's bookkeeper, in accordance with instructions from plaintiff's auditors, reversed the prior entries and applied the entire reserve account against the note account. Plaintiff did not notify Mansion House or defendants of either of these two journal entries.

The following facts must also be considered: on March 13, 1958, an involuntary petition in bankruptcy was filed against Mansion House; on November 12, 1958, a petition to compromise plaintiff's claim against Mansion House on the promissory note account (in the sum of $24,283.96) was filed by the trustee in bankruptcy. The claim was compromised by the referee in bankruptcy for $15,000 by an order which became final on January 22, 1959.

Plaintiff brought this action to recover from the defendants the amount due from the uncollected accounts, seeking to impose liability by reason of the guaranty agreement. The trial court rendered judgment in favor of plaintiff in the sum of $573.01 which represented the uncollected accounts receivable account offset by the reserve account balance less payments received. The trial court further granted attorney fees to plaintiff in the sum of $114.60. It is from the above judgment and awarding of attorney fees that plaintiff appeals.

Plaintiff's main contention on this appeal is that the reserve account should not have been deducted from the uncollected accounts receivable to arrive at the judgment, but rather, the judgment should reflect the entire amount of the uncollected accounts receivable—$9,189.61.

■ The first issue to be decided is: was plaintiff entitled to make an election respecting the application of the reserve account? The answer must be in the negative.

The factoring agreement prepared by plaintiff provided for the purchase of all the accounts receivable of Mansion House. The factoring agreement also set forth the circumstances under which Mansion House was required to repurchase the accounts receivable and set up a reserve account (20 per cent of the invoice amount) for security to guarantee such repurchase. The notes receivable, albeit a related transaction, involved a separate and independent contract. The trial court found as set out, *inter alia*: "That defendants executed the guarantee agreement in reliance upon the provision in the agreements between Mansion House and Aetna Factors that the reserve account would be applied to any contingent liability which might arise under the said factoring agreements." Moreover, the trial court found that "it was customary practice of Aetna Factors and agreed to by all the parties herein, that Aetna Factors would apply the reserve account to satisfy any uncollected Accounts Receivable upon which Aetna Factors had recourse, . . . ."

The trial court concluded, reading the factoring agreement together with the letter agreement of December 13, 1957, that the factoring agreement was the consideration for plaintiff's agreement to loan up to $35,000; and this $35,000, or any part thereof, was to be secured by the trust deed; and the reserve account was not security for this loan.

■ The general rule to be applied where the interpretation of written contracts is involved is as follows: "Where extrinsic evidence has been properly admitted as an aid to interpretation and either the evidence or inferences therefrom are in conflict, any reasonable construction by the lower court will be upheld under the general rule of conflicting evidence. (*Estate of Rule,* 25 Cal.2d 1, 10 [152 P.2d 1003, 155 A.L.R. 1319]; *Quader-Kino A. G.* v. *Nebenzal,* 35 Cal.2d 287, 294 [217 P.2d 650]; 3 Witkin, California Procedure, Appeal § 89, page 2253.)" (*Haidinger-Hayes, Inc.* v. *Marvin Hime & Co.,* 206 Cal.App.2d 46, 52 [23 Cal.Rptr. 455].) The plaintiff does not attack the findings of fact as being unsupported by the evidence but merely contends that the conclusions drawn by the trial court were erroneous. Applying the rule set forth above and determining that the trial court's conclusion was reasonable, plaintiff's position is without merit.

■ However, even if plaintiff did have the power to elect

which account should be credited with the reserve fund, he did make such an election and, consequently, is bound thereby. On May 29, 1958, plaintiff wrote off the uncollected accounts receivable against the reserve account in the ordinary course of business (Finding of Fact XIV). This was in accord with the customary practice of plaintiff. The trial court properly concluded that the application was binding upon plaintiff and discharged defendants from liability in the sum of $8,597.10. The trial court further concluded that the later reversal of the entries by plaintiff did not alter the effect of the prior application. "The creditors having thus once made the application, could not thereafter change it, but were bound by it." (*White* v. *Costigan*, 138 Cal. 564, 568 [72 P. 178].) (See also Civ. Code, § 1479–Two; 38 Cal.Jur.2d, Payment, § 37, p. 278.)

[██] Plaintiff contends that the application of the reserve account to the accounts receivable account on May 29, 1958, was a tentative and erroneous uncommunicated book entry and, therefore, does not constitute an irreversible application and further that plaintiff had the right to and did apply the reserve account to the note on June 24, 1958. This argument is without merit.

As pointed out, *supra*, the trustee in bankruptcy for Mansion House, petitioned to compromise a claim in the sum of $24,283.96—the full amount of the note receivable account. The following provisions in the petition show that the reserve account *had not* been deducted from the note receivable account:

"Your Petitioner has questioned the validity of the said Deed of Trust for the reason that same on its face appears to be security for the note executed by the bankrupt in the sum of $35,000.00, and Aetna Factors Company has been unable to provide your Petitioner with a copy of the said note. However, your Petitioner does believe that money in the approximate amount as claimed by Aetna Factors Company, to-wit, the sum of $24,283.96, was actually advanced by Aetna Factors Company to the bankrupt. Aetna Factors Company has claimed that at one time it did receive the said $35,000.00 note, but that same has been lost; additionally, Aetna Factors Company contends that even if there were no such $35,000.00 note, the Trust Deed would be reformed by a court of equity so as to indicate that it was security for the monies actually advanced by Aetna Factors Company.

"Your Petitioner and Aetna Factors Company have made an agreement, subject to approval by this court, to the following effect; out of the proceeds of the sale of the said real estate, your petitioner would pay to Aetna Factors Company the sum of $15,000.00, and the said Aetna Factors Company would release the said Trust Deed from the above described real property."[1]

*Refinance Corp.* v. *Northern Lumber Sales, Inc.*, 163 Cal. App.2d 73 [329 P.2d 109], relied on by plaintiff, is factually distinguishable from the case at bench since in that case there was no binding prior application of the reserve to the accounts receivable. There was such an application in the instant case as pointed out, *supra*. Consequently, the subsequent attempted application of the reserve account to the note receivable account in the instant case was prejudicial to defendants.

Since the reserve account was properly credited to the accounts receivable, leaving a balance of $573.01, the trial court was correct in giving plaintiff a judgment for that sum.

■ Plaintiff claims that the award of attorney fees in the sum of $114.60 was erroneous. Attorney fees are essentially within the discretion of the trial court and we cannot say that attorney fees equal to 20 per cent of the judgment are so inadequate as to be unreasonable.

■ Plaintiff's final contention is that the trial court should have awarded interest on the unpaid accounts receivable from March 31, 1958, to the date of judgment. We believe this contention to be meritorious. Under the rules set forth in Civil Code section 3287, the trial court should have awarded such interest and it was error not to do so.

The judgment of $573.01 is modified to include interest at 7 per cent thereon from March 31, 1958, to the date of judgment (February 16, 1961) in the amount of $115.87; the total judgment, including attorney fees and interest, being $803.48.

As so modified, the judgment is affirmed. Each side to bear its own costs on appeal.

Ashburn, J., and Herndon, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied January 30, 1963.

---

[1] If there had been a setoff, the claim would have been in the sum of $15,686.86 and not $24,283.96. It was reasonable for the trial court to infer that a compromise in the sum of $15,000 was entered into because of the dispute as to the validity of the trust deed.