[Civ. No. 34782. First Dist., Div. Four. Feb. 13, 1975.]

MILTON C. IVERSON, Plaintiff and Appellant, v.
SPANG INDUSTRIES, INC., Defendant, Cross-complainant
and Appellant;
DONALD CONN et al., Cross-defendants and Respondents.

COUNSEL

Richard T. LemMon for Plaintiff and Appellant.

Campbell, Warburton, Britton, Fitzsimmons & Smith and Willard Campbell for Defendant, Cross-complainant and Appellant.

Frank C. Burriesci, Peter G. Samuelson and Gassett, Perry, Frank & Bondelie for Cross-defendants and Respondents.

OPINION

**EMERSON, J.**[*]—From judgment in their favor, or partially so, plaintiff Iverson and defendant-cross-complainant Spang Industries, Inc. (Spang) take this appeal. Each claims inadequacy of its respective award and each makes other contentions which we shall discuss as we reach them. Spang has denominated its appeal a cross-appeal and for the sake of clarity we shall adopt that terminology.

Iverson sued Spang for damages for breach of a lease covenant which required Spang, the lessee, upon surrender of the premises to restore the building to its original condition, normal wear and tear excepted. Spang cross-complained against its sub-lessees Conn and Zebb asking for indemnification from them in the event that it (Spang) should be held liable.

[*]Retired judge of the superior court sitting under assignment by the Chairman of the Judicial Council.

The trial court determined that Iverson should be awarded damages in the amount of $2,711.45 plus attorney's fees and costs of suit, and that Spang was entitled to be indemnified by cross-defendant Zebb in the amount of $2,336.48 and by cross-defendant Conn in the sum of $259.61, but without costs of suit or attorneys' fees to Spang. Conn and Zebb are satisfied with the judgment but they resist Spang's contention that it is entitled to attorneys' fees on its cross-complaint.

## FACTS

The original lessee of the subject property was one Graywood Corporation. During the term of its lease Graywood subleased the property, one-half to a partnership known as Kemetric and one-half to one Addington. Kemetric later subleased to Spang, then known as Magnetics, Inc. The Graywood lease and the subleases expired on August 31, 1968. It should be noted that Iverson chose not to sue Graywood, Kemetrics or Addington for damage to the property.

Effective August 31, 1968, the lease involved herein became operative. During its term Spang subleased different parts of the property to Conn and Zebb for different periods of time. We now discuss the points presented by plaintiff-appellant Iverson.

### ADEQUACY OF THE TOTAL AWARD OF DAMAGES

Iverson contends that the trial court erred in that it failed to award damages for the entire loss occasioned by Spang's breach. His primary argument is that the trial court, in assessing the amount of damages, did not take into consideration the reduced rental value of the building.

The trial court found that on termination of the Spang (Magnetics) lease the partitions, changes and alterations then in existence were practically the same as those that were in existence at the commencement of said lease, and determined that the total amount of damages sustained by plaintiff was $5,422.90.

Plaintiff takes exception to these findings stating that he was required to pay $3,862.78 for repairs and restoration and that he sustained a loss of $10,700 as a result of the reduced rental value.[1]

---

[1]This figure is apparently based upon the difference between the rental value of the building in its original condition (allegedly $900 per month) and the rent due under the terms of the present three-year lease with Concept Manufacturing Co.

The relief to be awarded a prevailing lessor for breach of a covenant to restore the premises may be based upon one of three possible measures: The cost of restoring the premises, the diminution in the market value of the premises, or specific performance of the covenant. (Comment, *Breach of a Covenant to Restore* (1966) 39 So.Cal.L.Rev. 309, 309-310.) ■ In the majority of jurisdictions, including California, the restoration principle is employed; i.e., where an action is brought after expiration of a term for breach of a lessee's covenant to keep the premises in repair or to surrender them in good repair or in a specified condition, the measure of damages is the reasonable cost of putting the demised premises into the required state of repair or the condition contemplated by the covenant. (80 A.L.R.2d 983, 1001; 49 Am.Jur.2d, Landlord and Tenant, § 979, p. 951; *Gold Min. & Water Co.* v. *Swinerton* (1943) 23 Cal.2d 19, 38 [142 P.2d 22]; see also *Sprague* v. *Fauver* (1945) 71 Cal.App.2d 333, 337 [162 P.2d 865].) An allowance may also be made for the loss of rental during the reasonable time required to make such repairs or restoration. (*Worthington* v. *Kaiser Foundation Health Plan, Inc.* (1970) 8 Cal.App.3d 435, 442 [87 Cal.Rptr. 272]; cf. *Linforth* v. *S.F. Gas and Electric Co.* (1909) 156 Cal. 58, 62 [103 P. 320]; 49 Am.Jur.2d, Landlord and Tenant, § 958, p. 934.)

■ Iverson argues that not only is he entitled to damages based upon the cost of restoring the premises in question, but he is also entitled to recover damages based upon the reduced rental value of the property. He asserts that the reduced rental losses should be computed over the entire three-year term of the present lease.

This contention is based upon a mitigation of damages theory; i.e., that by renting the premises at less than market value on a negotiated basis Iverson was attempting to mitigate the damages incurred as a result of Spang's breach.

No California case has been found which sanctions a double recovery of this nature. Reduced rental value has on occasion been applied in other jurisdictions as a measure of damages for breach of a covenant to restore, but only under exceptional circumstances. (80 A.L.R.2d 983, 1019; see, e.g., *Brown Land Co.* v. *Lehman* (1907) 134 Iowa 712 [112 N.W. 185].) In the *Brown Land Co.* case the lessor was permitted to recover the difference between the reasonable rental value of the premises in the condition in which defendant lessee returned them and what would have been the reasonable rental value had they been in the condition in which the defendant, under his contract, should have surrendered them. Such difference was estimated *for the length of time as*

*the jury should find under the evidence would be required to put the premises in the proper condition.* (Compare plaintiff's position that he should be entitled to recover reduced rental losses for the entire three-year term of the current lease.)

It would appear from the foregoing analysis that the trial court in this case applied the proper measure of damages; i.e., the cost of putting the subject premises into the required state of repair. It found that such costs totalled $5,422.90. There is nothing in the record to support plaintiff's contention that the trial court failed to consider the costs of removal and restoration in making its award. The court in its findings of fact specifically referred to "[*t*]*he total amount* of damages in excess of reasonable wear & tear . . . ." [Italics added.] The court had before it evidence of the changes and alterations made during the term of the Spang lease, of the condition of the premises at the termination of the lease, and of the character, nature, and cost of repairs. It must therefore be concluded that the trial court in making its determination of the amount of damages sustained by plaintiff took all of this evidence into consideration. The reviewing court ". . . must assume that the trial court has considered all the evidence before it, determined which witnesses are to be believed, explained all discrepancies and inaccuracies to its own satisfaction, and that the findings express the facts." (*Bennett* v. *Phelps* (1955) 136 Cal.App.2d 645, 652 [289 P.2d 36].)

The evidence shows that some $8,309.31 was expended for repair and restoration of the premises. More than half of this sum was spent by the new and present lessee, Concept Manufacturing Co. Concept received an allegedly low monthly rental and a month's free rent in exchange for this payment.

It also appears that some of the items of repair resulted from normal wear and tear and were therefore chargeable to Iverson. The evidence viewed as a whole substantially supports the trial court's finding that the sum total of plaintiff's damages was the sum of $5,422.90.

### APPORTIONMENT OF DAMAGES

With respect to the issue of inadequate damages, Iverson further argues that the trial court erred in apportioning the amount of damages it did find on the basis of 50 percent to the prior lessee of the premises and 50 percent to Spang. The court found that the total amount of the damages in excess of reasonable wear and tear caused to the demised premises for the period September 1, 1963, to September 1, 1971, was the

sum of $5,422.90 with 50 percent thereof chargeable to the Graywood Corporation under its said lease and 50 percent thereof chargeable to defendant Spang under its said lease, or in the sum of $2,711.45.

Plaintiff argues that it was error for the court to apportion this sum between Graywood (who was not a party to this action) and defendant Spang. This argument is apparently based upon the following provision contained in the subject lease: "ELEVENTH: By entry hereunder, the lessee acknowledges that the said premises, and every part thereof, and all window glass or other glazing, electric and gas globes, plumbing, heating and lighting fixtures and plants, locks, bolts, elevators, boilers, heating system, and other fixtures, including sewer system, in and about the said premises are at the date of such entry complete and in good order, condition and repair; and that on the last day of the said term or other sooner termination of this lease, the lessee will peaceably and quietly leave, surrender and yield up to the lessor all and singular the said premises, with the said appurtenances and fixtures in good order, condition and repair, reasonable use and wear thereof and damage by act of God or by the elements excepted."

The trial court noted this provision and in its findings of fact stated: "The defendant lessee by paragraph eleven acknowledged that the premises and every part thereof were in good order, condition and repair and that on termination or surrender of the premises he would leave the same in good order, condition and repair, reasonable use and [wear] thereof excepted. However, said lessee did not examine or inspect the premises and in fact at the time he took possession of the same, they were not in good order, condition or repair."

■ Such covenants are generally reasonably interpreted to avoid placing any unwarranted burden of improvement on the lessee. (*Lynn* v. *DePue Warehouse Co.* (1962) 198 Cal.App.2d 742, 746 [17 Cal.Rptr. 841].) The case of *Kanner* v. *Globe Bottling Co.* (1969) 273 Cal.App.2d 559 [78 Cal.Rptr. 25], involved a covenant similar to that contained in paragraph 11 of the Magnetics lease. The court in discussing this provision stated: "The exception of ordinary wear and tear contemplates that deterioration will occur by reason of time and use despite ordinary care for its preservation. [Citations.] A tenant is not required to renovate the premises at the expiration of his lease; a covenant to repair should be reasonably interpreted . . . . [Citations.] The tenant is certainly not obligated to restore the premises to his landlord in a better condition than they were at the inception of the tenancy. [Citations.] The state of the evidence is susceptible of the inference that some of the damage was

not attributable at all to defendant, . . ." (*Kanner* v. *Globe Bottling Co., supra,* at pp. 565-566.)

██ In the instant case there is substantial evidence in support of the trial court's finding that a portion of the total damage was not attributable to defendant; i.e., that part of the damage was due to reasonable wear and tear and to the activities of Graywood, the prior lessee. Hence, it may be concluded that the trial court did not err in its apportionment of damages in this case.

### APPELLANT'S CLAIM FOR PREJUDGMENT INTEREST ON THE DAMAGES AWARDED

It is contended that the amount of damages awarded should include interest thereon at the legal rate as a matter of law. Appellant bases this argument upon section 3287 of the Civil Code which provides in part as follows: "Every person who is entitled to recover damages certain, or capable of being made certain by calculation, and the right to recover which is vested in him upon a particular day, is entitled also to recover interest thereon from that day, except during such time as the debtor is prevented by law, or by the act of the creditor from paying the debt."

Appellant asserts that the amount of the $3,862.78 in expenditures made by the plaintiff was capable of being made certain by calculation within the meaning of said code section, and cites the case of *West* v. *Holstrom* (1968) 261 Cal.App.2d 89 [67 Cal.Rptr. 831], in support of this argument. That case involved an action for collection of undercharges resulting from lumber hauling services where the tariff rates for the hauling of lumber had been fixed by the Public Utilities Commission. Thus, the amount of undercharge was easily calculable. These facts are readily distinguishable from the situation in the instant case. ██ Prior to the entry of judgment by the trial court Spang could not have known what amount, if any, it owed to appellant. The costs of repair made to the subject premises by appellant do not reveal what portion thereof resulted from use of the premises under the Graywood lease or what portion thereof was the result of reasonable wear and tear.

It is established that under section 3287 of the Civil Code, ". . . interest cannot be awarded prior to judgment when the amount of damages cannot be ascertained except on conflicting evidence. [Citations.] The rationale of such rule is that where a defendant does not know what amount he owes and cannot ascertain it except by accord or judicial process, he cannot be in default for not paying it." (*Conderback, Inc.* v.

*Standard Oil Co.* (1966) 239 Cal.App.2d 664, 689-690 [48 Cal.Rptr. 901], quoted in *West* v. *Holstrom, supra,* 261 Cal.App.2d 89 at p. 96.)

### SUFFICIENCY OF THE AWARD OF ATTORNEYS' FEES TO APPELLANT

 The trial court awarded appellant attorney's fees in the amount of $750. Appellant had requested $5,000. He challenges the sufficiency of the award arguing that it was so unreasonable as to constitute an abuse of discretion. He states that the nature and extent of the litigation and the amount of time involved[2] clearly demonstrate the unreasonableness of the award. It is well established that where a contract provides for attorney's fees without specifying a particular sum, the amount to be awarded is in the discretion of the court. (See 4 Witkin, Cal. Procedure (2d ed. 1971) Judgment, § 117 at p. 3268.) In exercising its discretion the court may take various factors into consideration, including the amount or value of the property involved, the intricacy and importance of the litigation, the labor and necessity for skilled legal training and ability in drawing the pleadings and trying the cause and the time consumed therein. (*Palm Springs etc. Co.* v. *Kieberk Corp.* (1941) 46 Cal.App.2d 234, 241 [115 P.2d 548]; see also *Boller* v. *Signal Oil & Gas Co.* (1964) 230 Cal.App.2d 648, 652-653 [41 Cal.Rptr. 206].) The amount of actual damages recovered may also be considered by the court in making its determination as to the amount of attorney's fees. (See *Shannon* v. *Northern Counties Title Ins. Co.* (1969) 270 Cal.App.2d 686, 690 [76 Cal.Rptr. 7].) The *Shannon* court, in affirming the decision of the trial court as to attorney's fees, noted that ". . . the burden which appellants must bear in seeking to upset the trial court's determination of reasonable attorney fees is substantial. ' "What is a reasonable fee for such services is first committed to the sound discretion of the trial judge . . . . [Citations.]" ' 'The only basis for reversal would be that the amount was so large (or so small) as to "shock the conscience" and suggest that passion and prejudice influenced the determination.' " (*Shannon* v. *Northern Counties Title Ins. Co., supra,* 270 Cal.App.2d 686, 688-689.) `

 There is nothing in the record to indicate that the trial court acted unreasonably in assessing attorney's fees in the sum of $750. This amount, which equals approximately 30 percent of the final judgment, is clearly not so small as to "shock the conscience." (See *Peskin* v. *Herron* (1962) 210 Cal.App.2d 482, 488 [26 Cal.Rptr. 821].) In addition, the record·shows that the decision of the trial court was the result of

---

[2]At the conclusion of the trial, appellant's attorney stated that because of the complexity of the case, over 100 hours had been spent.

careful consideration of the basic principles involved in fixing reasonable attorney's fees. It therefore should be concluded that the award of attorney's fees in this case was not unreasonable and did not constitute an abuse of discretion.

We turn now to the contentions of Spang as a cross-appellant.

### CROSS-APPELLANT'S RIGHT TO FURTHER INDEMNIFICATION

■ Cross-appellant Spang argues that by virtue of express indemnity clauses contained in the Zebb and Conn subleases, it is entitled to be indemnified by those cross-defendants for the full amount of the judgment rendered against Spang in the main action.[3] It bases this argument upon the allegation that "[a]ll damages to the premises occurring during the master lease occurred during occupancy by cross-defendants."

The trial court however expressly found that defendant Spang had been in possession of the premises, and that during such time it made additions and alterations thereto and caused damage thereto apart from reasonable wear and tear in the use thereof.

This finding is supported by substantial evidence. Spang (under the name Magnetics) took possession of the premises on June 17, 1968, and from June 17 until August 1, 1968, used the northern half of the premises. The Zebb lease commenced on August 1, 1968, but there is evidence that they did not completely occupy their portion of the premises for five or six weeks. The southern portion of the premises was used by Spang as a storage and maintenance work area until February 1, 1969, when the Conn sublease commenced. The record also contains evidence of alterations and damage to the property while it was in Spang's possession. It thus appears that the findings of the trial court in this regard are supported by substantial evidence, and that the court properly refused to indemnify Spang for the total amount of damage occurring during the term of the master lease. (See *MacDonald & Kruse, Inc.* v. *San Jose Steel Co.* (1972) 29 Cal.App.3d 413, 419-420 [105 Cal.Rptr. 725].)

### CROSS-APPELLANT'S RIGHT TO ATTORNEYS' FEES

Cross-appellant argues that the trial court erred in failing to make an

---

[3]It should be noted the amount in dispute here totals $115.36. Spang by the terms of the judgment in its favor on the cross-complaint received indemnification in the sum of $2,596.09. The judgment against Spang in the main action was for $2,711.45.

award of attorney's fees in its favor. ■ It is well-settled that a party is not entitled to attorney's fees as part of his judgment except where authorized by statute or contract. (*Bank of America etc. Assn.* v. *Moore* (1937) 18 Cal.App.2d 522, 529 [64 P.2d 460].)

The subleases in this case contained the following provision regarding attorney's fees: "TWELFTH: That in case suit shall be brought for an unlawful detainer of said premises, for the recovery of any rent due under the provisions of this lease, or because of the breach of any other covenant therein contained, on the part of the lessee to be kept or performed, the losing party will pay to the prevailing party a reasonable attorney's fee which shall be fixed by the judge of the court as part of the costs of such suit. . . ." The trial court rendered judgment on the cross-complaint in favor of cross-complainant, but failed to make any award of attorney's fees.

Section 1021 of the Code of Civil Procedure provides that "[e]xcept as attorney's fees are specifically provided for by statute, the measure and mode of compensation of attorneys and counselors at law is left to the agreement, express or implied, of the parties; . . ."

The agreement in the instant case clearly provided that in an action for breach of a lease covenant the prevailing party was entitled to recover reasonable attorney's fees.

■ Cross-defendants assert that Spang was not a true prevailing party, since Spang was held liable on the complaint for damage to the subject premises. For most purposes however the complaint and cross-complaint are treated as independent cross-actions (3 Witkin, Cal. Procedure (2d ed. 1971) Pleading, § 990; at p. 2571); hence, as between cross-complainant Spang and the cross-defendants, Spang may be considered the prevailing party.

Under section 1021 of the Code of Civil Procedure and applicable case law there is no question but that if a contract provides for the allowance of attorney's fees, and suit is instituted to enforce the provisions of the contract, such an allowance may properly be made. (*Heidt* v. *Miller Heating & Air Conditioning Co.* (1969) 271 Cal.App.2d 135, 137 [74 Cal.Rptr. 695].) Failure of the trial court to award reasonable attorney's fees under such circumstances has been held to constitute error. (*Heidt* v. *Miller Heating & Air Conditioning Co., supra,* at pp. 138-139; see also *Wiener* v. *Van Winkle* (1969) 273 Cal.App.2d 774, 788-789, 790 [78 Cal.Rptr. 761].)

Under the reasoning of the *Heidt* case it would appear that the trial court erred in failing to make any award of attorney's fees to cross-complainant.

The judgment is reversed insofar as it denies attorney's fees to cross-appellant Spang Industries, Inc.; in all other respects the judgment is affirmed. The matter is remanded to the trial court to determine the amount of reasonable attorney's fees on the cross-complaint, to amend the findings of fact and conclusions of law in accordance therewith, and enter judgment in accordance with the findings of fact and conclusions of law as amended.

Each party to bear its own costs on appeal.

Caldecott, P. J., and Rattigan, J., concurred.

A petition for a rehearing was denied March 4, 1975, and the petition of plaintiff and appellant for a hearing by the Supreme Court was denied April 10, 1975.