Filed 11/15/22  1351 Orizaba Avenue v. Nissani CA2/8

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION EIGHT

| | |
|---|---|
| 1351 ORIZABA AVENUE, LLC, | B305765 |
| Cross-complainant and Respondent, | Los Angeles County Super. Ct. No. BC651307 |
| v. | |
| HOOMAN MICHAEL NISSANI, | |
| Cross-defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, David Sotelo, Judge.  Affirmed.

McCreary and Duncan J. McCreary for Cross-defendant and Appellant.

Madden, Jones, Cole & Johnson and Montgomery Cole for Cross-complainant and Respondent.

_____

HTL Automotive, Inc. and Hooman Michael Nissani (together, Tenant) leased commercial property from 1351 Orizaba Avenue, LLC (Landlord). The lease obliged Tenant to repair the property, to maintain it, and to surrender it in good order. The lease addendum warned "the roof of the Premises leaks." Tenant did not repair the property during the entire nine-year lease term and surrendered it in bad shape. The parties sued each other, with Tenant seeking damages from environmental remediation efforts unrelated to any roof leaks, and Landlord seeking unpaid rent, late fees, and damages relating to the property's condition. After a bench trial, the trial court awarded Landlord roughly $750,000 and Tenant nothing. We affirm. Tenant failed to demonstrate reversible error.

As in other appeals, we presume the trial court reached the right result. (*Jameson v. Desta* (2018) 5 Cal.5th 594, 608–609.) Appellants have the burden to establish error justifying reversal by presenting pertinent legal authority and factual analysis supported by appropriate record citations. (*Ibid*.; *Keyes v. Bowen* (2010) 189 Cal.App.4th 647, 655.) They also must provide a summary of significant facts of record and must state the facts fairly. (Cal. Rules of Court, rule 8.204(a)(2)(C); *Fernandes v. Singh* (2017) 16 Cal.App.5th 932, 940–941, 944.) As we will explain below, Tenant failed to carry its burden here.

The following principles guide our review. Generally, the meaning of the parties' contract is a legal question subject to our independent review. (See *Bear Creek Master Assn. v. Southern Cal. Investors, Inc.* (2018) 28 Cal.App.5th 809, 818–819.) To the extent Tenant's appeal challenges the trial court's factfinding, we determine whether substantial evidence supports the findings. (*Schmidt v. Superior Court* (2020) 44 Cal.App.5th 570,

581–582.)  Finally, we review a trial court's refusal to exclude expert testimony for abuse of discretion.  (*Burton v. Sanner* (2012) 207 Cal.App.4th 12, 18, 22.)

We now turn to Tenant's three appellate arguments.

## I

Tenant first contends the damages award was improper because "a significant portion" of it arose from conditions (a leaky roof) that predated the lease, and a tenant is not responsible for improving the landlord's property.  There are multiple problems with this contention.

## A

Tenant relies entirely on distinguishable cases involving different leases.

This lease makes Tenant solely responsible for repairs and maintenance, *including restorations and replacements when needed to keep the property in good order*.  We excerpt the key language from the section titled "Maintenance; Repairs, Utility Installations; Trade Fixtures and Alterations" and include the subsection titles.  The emphasis is ours:

Section 7.1(a), Lessee's Obligations:  "Lessee shall, at Lessee's sole expense, keep the Premises . . . in good order, condition and repair (whether or not the portion of the Premises requiring repairs, or the means of repairing the same, are reasonably or readily accessible to Lessee, and *whether or not the need for such repairs occurs as a result of* Lessee's use, *any prior use, the elements or the age of such portion of the Premises*), including, but not limited to, all equipment or facilities, such as . . . *walls (interior and exterior), foundations, ceilings, roofs, roof drainage systems, floors, windows, doors* . . . located in, on, or adjacent to the Premises.  Lessee in keeping the Premises in good

order, condition and repair, shall exercise and perform good maintenance practices, . . . . *Lessee's obligations shall include restorations, replacements or renewals when necessary to keep the Premises and all improvements thereon or a part thereof in good order, condition and state of repair*."

Section 7.2, Lessor's Obligations: "*it is intended by the Parties hereto that Lessor have no obligation, in any manner whatsoever, to repair and maintain the Premises*, or the equipment therein, all of which obligations are intended to be that of the Lessee. It is the intention of the Parties that the terms of this Lease govern the respective obligations of the Parties as to maintenance and repair of the Premises, and they expressly waive the benefit of any statute now or hereafter in effect to the extent it is inconsistent with the terms of this Lease."

Section 7.4(c), Surrender; Restoration: "Lessee shall surrender the Premises by the Expiration Date or any earlier termination date, with all of the improvements, parts and surfaces thereof broom clean and free of debris, *and in good operating order, condition and state of repair*, ordinary wear and tear excepted. 'Ordinary wear and tear' shall not include any damage or deterioration that would have been prevented by good maintenance practice."

The addendum to the lease states: "Lessee will assume all obligations and liability with respect to use, maintenance, repair or possession of the Premises during the term of the Lease. Lessee will at Lessee's own expense maintain the property in good mechanical condition and running order, allowing for reasonable wear and tear."

4

As mentioned, the addendum also told Tenant the roof leaks and therefore alerted Tenant to a specific area in need of repair and maintenance. Yet Tenant concedes it made no repairs during the tenancy. Tenant has not established the trial court erred in concluding that the lease was unambiguous and that Landlord "is entitled to recover damages for the reasonable cost of repairing the damage to the premises caused by the abject failure of [Tenant] to perform any maintenance or repair for over nine years."

As for Tenant's cases, *Haupt v. La Brea Heating & Air Conditioning Co.* (1955) 133 Cal.App.2d.Supp. 784, 788–789 is distinguishable because the lease there, unlike the one here, had no provision regarding the tenant's duty to make repairs other than a provision regarding the floor; the court accordingly found awarding roof-related damages was improper. *Haupt* made clear there is no burden to improve property *absent an express covenant to do so*. (*Ibid.*)

In *Lynn v. De Pue Warehouse Co.* (1962) 198 Cal.App.2d 742, 743–744, 746–747 (*Lynn*), the court found property damage met various exceptions to the tenant's covenant to repair and therefore was the landlord's responsibility under the lease. Tenant points to no applicable lease exception here.

*Iverson v. Spang Industries, Inc.* (1975) 45 Cal.App.3d 303, 310–311 (*Iverson*) and *Kanner v. Globe Bottling Co.* (1969) 273 Cal.App.2d 559, 563, 565–566 (*Kanner*) rely on *Haupt* and *Lynn* and do not involve repair and replacement provisions like those here. Thus their comments regarding a tenant's general lack of duty to improve property or to repair preexisting damage are not controlling.

In dicta, most of these cases mention a general rule of interpreting repair covenants to avoid an unwarranted burden of improvement on tenants. (*Lynn, supra*, 198 Cal.App.2d at p. 746; *Iverson, supra*, 45 Cal.App.3d at p. 310; *Kanner, supra*, 273 Cal.App.2d at p. 565.) But Tenant's trial court and appellate court presentations do not establish any such burden was unwarranted here, in light of the lease language and Tenant's failure to make any repairs during the lease term.

## B

The second problem with Tenant's damages argument is it springs from a faulty premise. Tenant maintains it was undisputed the roof was dilapidated at the start of the lease. This is incorrect, and there was substantial evidence that much roof-related damage arose during the tenancy. Landlord witnesses testified there was one leak at the outset of the lease, roof cracks present at that time are not uncommon and were repairable, and the property was in "decent shape" before Tenant leased it; but after the tenancy, water poured into the building everywhere "like a waterfall," the roof was "severely compromised" and beyond repair, and the water damage was, according to one expert, "probably the worst situation" he had ever seen.

Nissani and other Tenant witnesses disputed the roof was ever in good shape, claiming the preexisting roof damage and leaks were extensive. The trial court sided with Landlord's witnesses over Tenant's. We may not substitute the trial court's assessment of witnesses' credibility with ours.

## C

A third problem relates to Tenant's insufficient argument and presentation of the facts.

Landlord's claimed damages concerned physical damage to many parts of the property, including damage seemingly unrelated to roof leaks. For example, there was testimony about removed bathrooms, a nonfunctioning/"deconstructed" HVAC system, a damaged sprinkler system, and doors with holes and missing or broken push bars. Yet Tenant's briefs never spell out what damage the award covers. Tenant says Landlord should not have received a new roof and other repairs necessitated by "the leaking roof" but never identifies what these repairs are. (There was testimony the property actually was five connected buildings with either wood or metal roofs.) Accordingly, even if Tenant's broad arguments about roof and related water damage were correct, Tenant has not established how the award is erroneous using references and citations to the evidence.

Our job is not to develop appellants' arguments for them or to scour the record for evidence supporting their positions. (See *United Grand Corp. v. Malibu Hillbillies, LLC* (2019) 36 Cal.App.5th 142, 153, 156; see also *Nielsen v. Gibson* (2009) 178 Cal.App.4th 318, 324 ["[A]n appellant must not only present an analysis of the facts and legal authority on each point made, but must also support arguments with appropriate citations to the material facts in the record. If he fails to do so, the argument is forfeited."].)

## II

Tenant next argues Landlord improperly passed off its renovation costs through its expert, and the trial court should have excluded this expert's testimony. The expert studied the damage to the property, determined what it would cost to repair the damage, and tried to include only repairs attributable to the damage in his report, not upgrades or improvements. He

admittedly did not know the condition of the property at the outset of the tenancy; he got involved in the property after Tenant left.

This does not mean the testimony was irrelevant or improper, however, as the Landlord's principal was a gatekeeper on damages: he was familiar with the condition of the property before the tenancy and testified he only sought damages attributable to the tenancy, excluding normal wear and tear, and he did not include renovations. The expert's testimony was needed to establish the costs of remedying the damage identified. It was relevant. The trial court properly noted Tenant's objections went to the weight of the evidence and properly permitted the testimony.

III

Finally, Tenant argues the waste cause of action fails because there was no evidence of a substantial or permanent diminution of the property's market value, as required under cases like *Smith v. Cap Concrete, Inc.* (1982) 133 Cal.App.3d 769, 776–777. Proof of the amount of property damage is not enough, Tenant maintains. But *Smith* signals courts can infer a drop in market value from certain property conditions, and the roof-related testimony of Landlord's witnesses highlighted above arguably suffices. (*Id.* at pp. 777–778; see also *id.* at p. 777 [loss of market value is a measure that "will be applied flexibly"].)

Even if it did not, the trial court's finding of waste was harmless: the court did not segregate damages between Landlord's two causes of action (breach of contract and waste) and did not say what damages, if any, were attributable to the waste claim alone.

Tenant has established neither improper damages nor error requiring reversal.

**DISPOSITION**

We affirm the judgment and award costs to 1351 Orizaba Avenue, LLC.


WILEY, J.

We concur:


STRATTON, P. J.


HARUTUNIAN, J.*

---

* Judge of the San Diego Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.