Filed 8/19/14  Applied Biosystems v. 384 Foster City Blvd. Partners

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| APPLIED BIOSYSTEMS, LLC,<br><br>  Cross-complainant and Appellant,<br><br>v.<br><br>384 FOSTER CITY BOULEVARD PARTNERS,<br><br>  Cross-defendant and Respondent. | A135226<br><br>(San Mateo County<br>Super. Ct. No. CIV 496994) |

A landlord, 384 Foster City Boulevard Partners (FCB Partners), sued its former tenant, Applied Biosystems, LLC (Applied Biosystems), for lost rent damages it incurred due to the inability to lease the premises after Applied Biosystems failed to repair and restore the leased premises at the conclusion of the lease.  In a cross-complaint, Applied Biosystems sought to rescind an agreement in which FCB Partners gave Applied Biosystems a limited release in exchange for receiving $345,000 to repair and restore the premises.  Applied Biosystems claimed FCB Partners breached the limited release by filing its lawsuit.  The trial court granted FCB Partners' motion to strike the cross-complaint as a strategic lawsuit against public participation (SLAPP) pursuant to Code of Civil Procedure section section 425.16—commonly referred to as the anti-SLAPP statute.[1]

On appeal, Applied Biosystems challenges the order granting the anti-SLAPP motion, arguing that it established a probability of prevailing on its cross-complaint.

---

[1]All further statutory references are to the Code of Civil Procedure unless otherwise specified.

1

Applied Biosystems claims it is entitled to rescission of its agreement with FCB Partners because the core allegations of the complaint filed by FCB Partners are false and in breach of the limited release. For its part, FCB Partners argues that the limited release covered only the costs of restoring the premises but did not extend to lost rent damages. Because we agree with FCB Partners that the filing of its lawsuit for lost rent damages does not entitle Applied Biosystems to rescind the agreement, we shall affirm the trial court's order.

## FACTUAL AND PROCEDURAL BACKGROUND

FCB Partners is a general partnership that owns a commercial office building and parking lot located at 384 Foster City Boulevard in Foster City (the premises). FCB Partners leased the premises to Applied Biosystems beginning in 1997.[2] Three years into the lease, Applied Biosystems expanded the parking lot from the premises onto an adjacent property. As part of the project to expand the parking lot, the water and electrical services at the premises were connected to the neighboring property.

Applied Biosystems and its subtenant vacated the premises by February 8, 2008, which was the date the lease expired. When Applied Biosystems moved out it had not restored the premises to its former condition as required by the lease. Four months after moving out, Applied Biosystems still had not completed the restoration. Instead of doing so, it proposed to simply pay FCB Partners to have the restoration work done. In a draft agreement proposed by Applied Biosystems, it offered to pay FCB Partners $310,000 in exchange for a complete release of "any and all commitments, obligations, liabilities, losses, damages, *rents,* causes of action, costs, and expenses" under the lease. (Italics added.) The attorney for FCB Partners rejected the draft agreement, describing it in an e-mail to Applied Biosystems as a "complete release" that was never contemplated by the parties. The attorney for FCB Partners explained in the e-mail that the parties

---

[2]Applied Biosystems is actually the successor in interest to the entity that originally leased the premises from FCB Partners. For the sake of consistency and simplicity, when referring to the parties to the lease we use the names of the parties to this action instead of any predecessor or successor entities.

contemplated a release limited to the obligation to return the premises to the condition required by the lease.

Nearly a year after the lease ended, Applied Biosystems and FCB Partners reached an agreement in January 2009 settling the restoration costs issue (the 2009 limited release). The terms of the 2009 limited release provided that Applied Biosystems would pay $345,000 to FCB Partners and that "[t]his payment releases Applied Biosystems, Inc. (PE Corporation, The Perkin-Elmer Corporation, and Applera Corporation, previous names of Applied Biosystems, Inc., the 'Lessee'), its successors, assigns, affiliates, subsidiaries, employees, officers, directors, agents, and representatives, from any and all interior repairs and exterior landscape and parking lot work necessary to restore the Premises to the condition required pursuant to the Lease."[3]

FCB Partners filed suit against Applied Biosystems in July 2010.[4] The original complaint contained causes of action for breach of contract and conversion. FCB Partners alleged that Applied Biosystems failed to restore the premises in accordance with the lease terms at the conclusion of the tenancy in February 2008 despite repeated demands from FCB Partners to repair and restore the premises. FCB Partners acknowledged receiving $345,000 from Applied Biosystems in January 2009 as a payment in lieu of the obligation to restore the interior, parking lot, and landscaping. According to the complaint, at some point after receiving the $345,000 payment from Applied Biosystems, FCB Partners discovered that Applied Biosystems "without notice or permission" had connected the water supply from the premises to the neighboring property in order to provide water to the adjacent parking lot controlled by Applied Biosystems. FCB Partners alleged that as a result of the failure to restore the premises, Applied Biosystems had been a holdover tenant since February 2008 and owed

---

[3]The party to this appeal—Applied Biosystems, LLC—is the successor in interest to Applied Biosystems, Inc.

[4]The named plaintiff in the original complaint was a successor in interest to FCB Partners, and the named defendant was Applied Biosystems' predecessor in interest. The parties later stipulated that the proper parties were FCB Partners as plaintiff and Applied Biosystems as defendant.

FCB Partners rent at the fair market value for the use of the premises. FCB Partners sought lost rent damages exceeding $1.9 million as well as $10,000 for the water allegedly used without permission to irrigate the neighboring property.

In a first amended complaint, FCB Partners clarified that Applied Biosystems was a tenant at sufferance for the period from February 2008 until at least January 2009. The first amended complaint referenced the partial release in exchange for the payment of $345,000 but alleged that the 2009 limited release "did not release any claims of rent during the tenancy by sufferance . . . ." The first amended complaint also added an allegation that Applied Biosystems "without notice or permission" connected into the premises' electrical service in order to provide electricity to the neighboring property controlled by Applied Biosystems. Applied Biosystems alleged that the cost to remediate and repair the water and electrical system was no less than $10,000. The first amended complaint added causes of action for trespass, quantum meruit, and waste. FCB Partners sought damages totaling $980,000 as the reasonable value of the lost rent and the water and electricity supplied to the neighboring property. The estimated value of the water and electricity supplied to the neighboring property was $10,000. Consequently, almost all of the damages sought were for lost rent.

The operative second amended complaint was filed in April 2011. The second amended complaint added a cause of action for tenancy by sufferance. FCB Partners alleged that the 2009 limited release did not extend to claims unknown at the time of the agreement in the absence of any waiver of the provisions of Civil Code section 1542.[5] FCB Partners further alleged that it was required to spend substantial sums to restore and repair "alterations, modifications, utility installations and other components of the Premises beyond those covered by [the 2009] Limited Release." FCB Partners sought lost rent damages totaling at least $980,000. In October 2011, FCB Partners voluntarily

_____

[5]Civil Code section 1542 provides: "A general release does not extend to claims which the creditor does not know or suspect to exist in his or her favor at the time of executing the release, which if known by him or her must have materially affected his or her settlement with the debtor."

4

dismissed the causes of action for conversion, quantum meruit, and waste, which it described as the causes of action arising out of the unauthorized use of water and electricity.

In November 2011, Applied Biosystems filed a first amended cross-complaint (hereafter cross-complaint) against FCB Partners. The cross-complaint is the subject of this appeal. The cross-complaint contained a single cause of action for rescission of the 2009 limited release and sought restitution of the $345,000 paid pursuant to that agreement. Applied Biosystems claimed that the filing of the complaint, first amended complaint, and second amended complaint by FCB Partners constituted a breach of the 2009 limited release. Applied Biosystems alleged that FCB Partners falsely asserted it was unaware of the electrical and water connections to the neighboring property at the time it entered into the 2009 limited release. Applied Biosystems further alleged that FCB Partners falsely claimed to have undertaken extensive repair and restoration efforts in connection with the electrical and water services. Consequently, Applied Biosystems asserted it was entitled to rescission of the 2009 limited release because the filing of the action by FCB Partners resulted in a failure of consideration. The consideration that allegedly failed was "the release of any future litigation against Applied Biosystems and its successors on account of the condition of the Premises . . . ."

FCB Partners moved to strike the cross-complaint filed by Applied Biosystems as a SLAPP suit. FCB Partners argued that the cross-complaint arose out of protected activity and that Applied Biosystems could not establish a probability of success on the merits of its rescission cause of action. FCB Partners also sought to file a third amended complaint that would remove any factual allegations concerning the electrical and water services in order to clarify that the damage claim was for lost rent and not for any repair or restoration cost.

In its opposition to the anti-SLAPP motion, Applied Biosystems presented evidence that FCB Partners was fully aware of the utility connections to the neighboring property at least eight years before it entered into the 2009 limited release. Indeed, a 2005 amendment to the lease agreement—which is attached to the second amended

complaint filed by FCB Partners and is referenced in the 2009 limited release—required Applied Biosystems to remove at its expense "all utilities supporting the Adjacent Property . . . ." Therefore, Applied Biosystems argued that any work required to separate utility connections to the neighboring property was covered by the 2009 limited release. Further, Applied Biosystems offered evidence that FCB Partners did not, in fact, perform any repairs and had already leased the premises to another tenant—with the parking lot and utility connections unchanged—at the time it filed its second amended complaint. Applied Biosystems contended that these "sham allegations" were made to circumvent the 2009 limited release and force it to defend against claims released by that agreement.

At a hearing on the anti-SLAPP motion, counsel for FCB Partners did not dispute that there was evidence FCB Partners knew about the utility connections before entering into the 2009 limited release. Nevertheless, counsel urged that the utility connections were never "what this case has been about" and pointed out that the utility-related claims had been dismissed by FCB Partners. Counsel for FCB Partners argued that, wholly apart from any claim arising from utility connections, the lawsuit concerned lost rent owing to the period between February 2008 and January 2009, when the premises were tied up in a dispute over the failure of Applied Biosystems to restore the premises as required by the lease. Counsel represented that FCB Partners attached a copy of the 2009 limited release to the second amended complaint for the specific purpose of establishing that it was not seeking any damages within the scope of that agreement.

The trial court granted the anti-SLAPP motion. It reasoned that the cross-complaint arose out of protected activity and that Applied Biosystems had failed to establish a probability of prevailing on the merits of its cross-complaint. The court concluded that Applied Biosystems had not made a prima facie showing that FCB Partners sought damages for matters covered by the 2009 limited release. This appeal followed.

DISCUSSION

1.  ***Governing Legal Principles Concerning Anti-SLAPP Motions***

"A SLAPP suit—a strategic lawsuit against public participation—seeks to chill or punish a party's exercise of constitutional rights to free speech and to petition the government for redress of grievances. [Citation.] The Legislature enacted Code of Civil Procedure section 425.16[6]—known as the anti-SLAPP statute—to provide a procedural remedy to dispose of lawsuits that are brought to chill the valid exercise of constitutional rights." (*Rusheen v. Cohen* (2006) 37 Cal.4th 1048, 1055–1056.)

A court's consideration of an anti-SLAPP motion involves a two-step process. "First, the court decides whether the defendant has made a threshold showing that the challenged cause of action is one arising from protected activity. The moving defendant's burden is to demonstrate that the act or acts of which the plaintiff complains were taken 'in furtherance of the [defendant]'s right of petition or free speech under the United States or California Constitution in connection with a public issue,' as defined in the statute. (§ 425.16, subd. (b)(1).) If the court finds such a showing has been made, it then determines whether the plaintiff has demonstrated a probability of prevailing on the claim." (*Equilon Enterprises v. Consumer Cause, Inc.* (2002) 29 Cal.4th 53, 67.)

In order to establish a probability of prevailing on the claim, "the plaintiff 'must demonstrate that the complaint is both legally sufficient and supported by a sufficient prima facie showing of facts to sustain a favorable judgment if the evidence submitted by the plaintiff is credited.' " (*Wilson v. Parker, Covert & Chidester* (2002) 28 Cal.4th 811, 821.) "Thus, plaintiffs' burden as to the second prong of the anti-SLAPP test is akin to that of a party opposing a motion for summary judgment." (*Navellier v. Sletten* (2003) 106 Cal.App.4th 763, 768.)

---

[6]Section 425.16, subdivision (b)(1) provides: "A cause of action against a person arising from any act of that person in furtherance of the person's right of petition or free speech under the United States Constitution or the California Constitution in connection with a public issue shall be subject to a special motion to strike, unless the court determines that the plaintiff has established that there is a probability that the plaintiff will prevail on the claim."

We review the trial court's decision to grant or deny an anti-SLAPP motion de novo. (*Flatley v. Mauro* (2006) 39 Cal.4th 299, 325.) We independently review both the relevant issues: whether the complaint arises from protected activity and whether the plaintiff has demonstrated a probability of prevailing on the merits. (*Delois v. Barrett Block Partners* (2009) 177 Cal.App.4th 940, 946–947.) In doing so, we consider "the pleadings, and supporting and opposing affidavits stating the facts upon which the liability or defense is based." (§ 425.16, subd. (b)(2).) " 'However, we neither "weigh credibility [nor] compare the weight of the evidence. Rather, [we] accept as true the evidence favorable to the plaintiff [citation] and evaluate the defendant's evidence only to determine if it has defeated that submitted by the plaintiff as a matter of law." ' " (*Flatley v. Mauro, supra,* 39 Cal.4th at p. 326.)

## 2. *Protected Activity*

In analyzing a defendant's burden under the first prong of the anti-SLAPP analysis, "the critical consideration is whether the cause of action is *based on* the defendant's protected free speech or petitioning activity." (*Navellier v. Sletten* (2002) 29 Cal.4th 82, 89.) "The anti-SLAPP statute's definitional focus is not on the form of the plaintiff's cause of action but, rather, the defendant's *activity* that gives rise to his or her asserted liability—and whether that activity constitutes protected speech or petitioning." (*Id.* at p. 92.)

Here, it is undisputed that the cross-complaint filed by Applied Biosystems is based upon protected activity—i.e., the filing of the lawsuit by FCB Partners. Our Supreme Court considered a factually analogous circumstance in *Navellier v. Sletten, supra,* 29 Cal.4th 82. There, plaintiffs in a state action alleged that the defendant breached the terms of a release by filing counterclaims in a federal action. (*Id.* at p. 87.) Our Supreme Court concluded the lawsuit was based upon the defendant's protected activity of filing affirmative counterclaims in federal court. (*Id.* at p. 90.) The court dismissed the concern that including an action for breach of a release within the ambit of the anti-SLAPP statute would deprive the releasee of the constitutional right to seek

8

redress for legitimate grievances.  (*Id.* at p. 93.)  As the court explained, the anti-SLAPP statute "poses no obstacle to suits that possess minimal merit."  (*Ibid.*)

Having concluded that the first prong of the anti-SLAPP analysis is satisfied in this case, we turn to the question of whether the cross-complaint filed by Applied Biosystems possesses minimal merit.

**3.      *Probability of Prevailing on the Merits***

Applied Biosystems contends the trial court erred in concluding that it failed to establish a probability of prevailing on the merits of the cross-complaint.  For the reasons that follow, we disagree with Applied Biosystems.

Civil Code section 1689, subdivision (b)(2) provides that a party to a contract may rescind the contract "[i]f the consideration for the obligation of the rescinding party fails, in whole or in part, through the fault of the party as to whom he rescinds."  Applied Biosystems claims that consideration for its payment of $345,000 failed because FCB Partners breached the 2009 limited release by filing its lawsuit against Applied Biosystems.  In order to assess whether Applied Biosystems has a probability of prevailing on its rescission claim, it is necessary to consider (1) the scope of the 2009 limited release, (2) the claims asserted in the various complaints filed by FCB Partners, and (3) whether the assertion of any claims by FCB Partners amounted to a repudiation of the 2009 limited release.

With regard to the scope of the 2009 limited release, it is not nearly as expansive as Applied Biosystems suggests.  At one point in its briefing on appeal, Applied Biosystems claims the 2009 limited release was meant to afford it "finality and peace of mind" as well as "freedom from future threats, claim[s] and litigation, whatever the cost, aggravation or consequences."  The plain terms of the 2009 limited release belie this broad characterization.  The scope of the release afforded by the 2009 limited release was restricted to repairs and work necessary to restore the premises to the condition required by the lease.  It did not extend to *any* claims arising out of restoration work or the failure to perform that work.  Nor did it extend to unknown claims in the absence of a waiver of Civil Code section 1542.  To the extent there is any ambiguity in the scope of the 2009

9

limited release, the available extrinsic evidence confirms that FCB Partners specifically rejected a general release and expressed its intention to limit the release to the obligation to restore the premises to the condition required by the lease. (See *Lonely Maiden Productions, LLC v. GoldenTree Asset Management, LP* (2011) 201 Cal.App.4th 368, 376 [extrinsic evidence may be admissible to interpret ambiguous language in a final, integrated agreement].) Further, extrinsic evidence indicates that FCP Partners refused to accept a draft agreement that would have included rent claims within the scope of the release.

As for the claims asserted by FCB Partners, the parties to this appeal have offered vastly different characterizations of the thrust of those claims. Applied Biosystems asserts that the core allegations of the complaints filed by FCB Partners turn on the repair of electrical and water services that were allegedly being provided to a neighboring property without the knowledge or consent of FCB Partners. By contrast, FCB Partners discounts the significance of the utility claims, asserting that the case concerns lost rent damages flowing from the failure to restore the premises at the conclusion of the lease.

We agree with FCB Partners that Applied Biosystems places too much emphasis on the utility claims. First, it should be noted that FCB Partners agreed to dismiss or remove all causes of actions and allegations relating to the utility claims, indicating that those allegations were not critical to the case against Applied Biosystems. Further, as set forth in all three complaints filed by FCB Partners, Applied Biosystems was a holdover tenant or tenant at sufferance from February 2008, when it vacated the premises, until at least January 2009, when it paid FCB Partners $345,000 for the restoration of the premises. The lost rent claim arising out of this allegation does not turn on an assertion that Applied Biosystems failed to repair or remediate utility connections to a neighboring property. While there was a factual allegation that the existence of the utility connections to the neighboring property gave rise to a continuing holdover tenancy beyond January 2009, that allegation was not the crux of the breach of contract claim for the period beginning in February 2008 and continuing until January 2009.

10

In order to support a claim for rescission, a breach of contract must be material. (*Brown v. Grimes* (2011) 192 Cal.App.4th 265, 277.) Applied Biosystems contends that the filing of the lawsuit by FCB Partners constituted a material breach of the 2009 limited release because the lawsuit included released claims related to electrical and water service. Even if that were so, the existence of a material breach does not necessarily entitle Applied Biosystems to rescission. A fundamental component of the cause of action asserted by Applied Biosystems is a request for restitution of the $345,000 paid in exchange for the limited release. Indeed, there would be no purpose in rescinding the 2009 limited release unless Applied Biosystems received its money back. In order to support a claim for restitution, there must be a "total failure of consideration or repudiation." (*Id.* at p. 281.) A partial breach is insufficient. (*Ibid.*) Whereas a partial breach may be sufficient to support a claim for damages, it does not necessarily support completely unwinding the contract and returning the parties to the status quo ante.

In this case, any breach of the 2009 limited release was at most partial. As the trial court recognized, Applied Biosystems was not deprived of the benefit of the 2009 limited release. Applied Biosystems can still assert the 2009 limited release as an affirmative defense to the claims asserted by FCB Partners. Moreover, the 2009 limited release did not extend to lost rent claims, which formed the heart of the lawsuit filed by FCB Partners. Insofar as FCB Partners asserted claims based on utility connections purportedly left in place by Applied Biosystems, those claims constituted a small portion of the lawsuit and were ultimately dismissed by FCB Partners.

Applied Biosystems places great emphasis on evidence purportedly showing that the lawsuit FCB Partners filed contained sham allegations. We fail to see how the veracity of the allegations contained in the lawsuit filed by FCB Partners bears upon the right of Applied Biosystems to rescind the 2009 limited release. The analysis of whether a claim falls within the scope of the 2009 limited release turns on the nature of the claim and not on whether the claim is true or false. A claim for lost rent does not fall within the scope of the 2009 limited release, regardless of whether the claim is meritorious or not.

11

Consequently, Applied Biosystems is not entitled to rescission of the 2009 limited release on the ground the operative complaint filed by FCB Partners lacks merit.

Applied Biosystems also argues FCB Partners has no claim for lost rent in light of the $345,000 payment to restore the premises, and it argues that the lost rent claim is simply a ploy to get around the effect of the 2009 limited release. It relies upon the principle that a landlord is not entitled to lost rent in addition to the cost of restoring the premises. (See *Iverson v. Spang Industries, Inc.* (1975) 45 Cal.App.3d 303, 308.) Under California law, the general measure of damages for a breach of the covenant to surrender the premises in good repair "is the reasonable cost of putting the demised premises into the required state of repair or the condition contemplated by the covenant." (*Avalon Pacific-Santa Ana, L.P. v. HD Supply Repair & Remodel, LLC* (2011) 192 Cal.App.4th 1183, 1201–1202.) However, an allowance for lost rental income may be made for the time the landlord is unable to lease the premises, including the reasonable time required to make repairs or restore the property. (*Id.* at p. 1202.) Here, FCB Partners was unable to lease the property for nearly a year before Applied Biosystems agreed to pay the restoration costs. Consequently, it is far from clear that the principle relied upon by Applied Biosystems would preclude the recovery of lost rent damages if they are otherwise warranted. Even if this principle precluded FCB Partners from recovering damages for lost rent, it would simply mean that it is not entitled to lost rent damages on its operative complaint. It would still not entitle Applied Biosystems to rescind the 2009 limited release.

We conclude that Applied Biosystems has not established a probability of prevailing on its cross-complaint. It is not entitled to rescission of the 2009 limited release as a result of the filing of the lawsuit by FCB Partners, which seeks damages outside the scope of the release. The filing of a complaint that includes some allegations

12

falling within the scope of a limited release does not constitute a complete repudiation or total breach of the limited release sufficient to justify rescission and restitution.[7]

In light of our conclusion, it is unnecessary to address the remaining contentions of the parties, including claims that the litigation privilege bars the cross-complaint and that Applied Biosystems lacks capacity to sue for rescission.  Further, because our disposition does not turn upon the proposed third amended complaint, there is no need to address the claim by Applied Biosystems that the trial court should have sustained an objection to evidence of that proposed pleading.

## DISPOSITION

The order granting respondent's anti-SLAPP motion is affirmed.  Respondent shall recover its costs on appeal.

_____
McGuiness, P.J.

We concur:

_____
Pollak, J.

_____
Siggins, J.

---

[7]Our disposition would be no different if, instead of seeking to rescind the 2009 limited release, Applied Biosystems had chosen to sue for damages as a result of a breach of the 2009 limited release.  In *Navellier v. Sletten, supra,* 106 Cal.App.4th at page 769, the court concluded that a claim for breach of a release lacked merit because the plaintiffs presented no evidence of damages from the breach.  The plaintiffs could not recover damages because the release did not contain a provision allowing recovery of attorney fees.  (*Ibid.*)  Consequently, even though the plaintiffs had purportedly incurred attorney fees in defending against claims covered by the release, the release did not allow them to recover those fees as damages for breach of the release.  Here, too, because the 2009 limited release does not contain an attorney fee provision, Applied Biosystems could not claim as damages the attorney fees spent defending the lawsuit filed by FCB Partners.  Therefore, if Applied Biosystems had chosen to pursue damages instead of rescission and restitution, its claim would still lack minimal merit required to survive an anti-SLAPP motion.

13