Filed 2/24/22  Blackburn v. County of San Diego CA4/1

# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## COURT OF APPEAL, FOURTH APPELLATE DISTRICT

## DIVISION ONE

## STATE OF CALIFORNIA

| | |
|---|---|
| DAVID A. BLACKBURN, Individually and as Trustee, etc. et al., | D076904 |
| Plaintiffs and Appellants, | |
| v. | (Super. Ct. No. 37-2016-00018510-CU-EI-CTL) |
| COUNTY OF SAN DIEGO, | |
| Defendant and Appellant. | |

APPEAL from a judgment and an order of the Superior Court of San Diego County, Kevin A. Enright and Joel R. Wohlfeil, Judges.  Affirmed in part and reversed in part.

Winters & Associates, Jack B. Winters and Georg M. Capielo, for Plaintiffs and Appellants.

Thomas E. Montgomery, County Counsel, Thomas D. Bunton, Assistant County Counsel, John P. Cooley, Deputy Attorney General; Paul Plevin Sullivan & Connaughton and Jeffrey P. Michalowski for Defendant and Appellant.

In this dispute regarding an alleged breach of two leases, both landlord David A. Blackburn and tenant County of San Diego (the County) appeal the judgment in favor of Blackburn and the order awarding him attorney fees.

According to the allegations of Blackburn's complaint, the County damaged Blackburn's building and improperly removed property when it vacated the building at the end of a long-term lease. Blackburn alleged that under the terms of the lease, the County was required to pay for any necessary repairs to return the building to its original condition. He also sought to recover for lost rent for the period between the County's move and the signing of a lease with a new tenant. In response, the County denied the allegations but also asserted Blackburn could not establish the County breached the contract to the extent any of the repairs were covered by insurance. Before trial, the parties agreed to sever all issues regarding insurance coverage to a second phase of trial.

The jury returned a verdict in favor of Blackburn, but awarded only a fraction of his requested damages, primarily arising from the repair costs for an elevator. Thereafter, the trial court found that the County was barred from raising any issues regarding insurance coverage due to its failure to plead those issues as affirmative defenses. The court also granted Blackburn's motion for attorney fees, finding he was the prevailing party and rejecting the County's argument that the leases at issue did not include an attorney fee provision.

On appeal, the County raises several challenges to both the jury's verdict and the trial court's rulings. Blackburn offers a conditional argument that if this court reverses the judgment, we should consider whether the trial court erred in instructing the jury on the proper measure of damages.

We conclude that the jury's verdict is supported by substantial evidence and no prejudicial error occurred in the first phase of trial. However, the trial court erred in the second phase of trial by not permitting the County to argue that, under the plain language of the leases, it did not breach the leases because Blackburn could not establish that the repairs were not covered by his insurance. We also conclude that the trial court erred in finding the third-party indemnity provisions in the leases permitted a recovery of attorney fees in this direct breach of contract action. Accordingly, we reverse the judgment in part with directions to retry the second phase of trial and also reverse the order awarding attorney fees.

FACTUAL AND PROCEDURAL BACKGROUND

In 1987, the County agreed to a five-year lease of the second floor of the commercial building owned by Blackburn. When the original lease expired, the parties signed a new lease for the second floor. Thereafter, in 1996, the parties reached an agreement to also lease the first floor to the County.

The leases required Blackburn to install several improvements, including a fire and security system. During the tenancy, the County installed additional improvements. The County's tenancy continued without conflict for many years until late 2013, when the County Board of Supervisors voted to approve a lease at a different building to relocate the employees occupying Blackburn's building. By that time, the original term of both leases had ended and the County's tenancy was month-to-month.

In August 2014, the County vacated the building. As part of the move, the County removed what it believed was its property, including office partitions, door locks activated by electronic identification cards, baby changing stations in the restrooms, and a fire alarm and control system with propriety County information. During the move, the building's elevator

3

stopped working and some carpeting was damaged. According to Blackburn, the County also cut data cabling in the building.

Shortly thereafter, Blackburn alerted the County in a letter that he did not believe it left the building in satisfactory condition as required by the leases and provided a list of repairs to be made by the County. Blackburn stated that if the County did not respond within 10 days, he would make the repairs and send a bill to the County.

In response, the County agreed to remedy some of the issues raised by Blackburn, but largely contended it properly removed its personal property from the building before vacating and fully complied with its duties under the lease.

At the same time, Blackburn reported the loss to his insurer, which denied the claim on the basis that (1) the County owned the property removed from the building, (2) the damage caused by removal did not constitute "vandalism" covered by the insurance policy, and (3) any damage by the County was "mere 'wear and tear,' " which is excluded under the policy.

Blackburn also sought a new tenant for the building. Before the County vacated, Blackburn listed the building for sale, but was unable to find a buyer between June 2013 and May 2015, when he took the building off the market after signing a lease with a new tenant.

A real estate broker retained by Blackburn to assist in leasing the building testified at trial that after the County vacated the building at the end of its lengthy tenancy, the building was not ready for most tenants and needed improvements. He believed that before the building was ready to be occupied it would need new carpet, paint, and replacement of ceiling tiles.

4

As part of the lease with the new tenant, Blackburn agreed to extensive tenant improvements and the building was essentially stripped bare inside to allow for custom improvements selected by the new tenant. The broker testified that the broken elevator had no effect on the ability to secure a new tenant because potential tenants were told it would be repaired.

A representative of the new tenant testified that the building was "gutted" at the tenant's request because the existing layout did not match its needs. The new tenant was not interested in retaining the existing carpeting or partitions. Similarly, the new tenant was not concerned with the current state of door locks because it intended to install its own card readers on the doors.

Nevertheless, Blackburn believed that the County's actions prevented him from having the option of leasing the building immediately upon the County's vacancy to a new tenant. Accordingly, he filed this lawsuit.

In his operative complaint, Blackburn alleges the County breached the lease agreements. Specifically, Blackburn alleges that he performed all conditions, covenants, and promises required by the leases and the County breached the leases "by not leaving the premises in a condition similar to the leasehold during its possession, [and] by damaging the leasehold and removing property that belonged to [Blackburn]."

Before trial, Blackburn entered into a settlement agreement with his insurer after he filed a bad faith action in federal court.[1] Blackburn filed motions in limine to exclude any reference to the settlement agreement while the County filed its own motion in limine to preclude Blackburn from introducing evidence of any damages that were subsequently covered by the settlement with the insurance company.

After extensive argument on the motions in limine, the trial court indicated its preference to defer ruling on the motions in limine regarding insurance until after the jury's verdict. The court suggested that all insurance issues be reserved for a second phase of trial and that those issues be resolved by the court rather than the jury. The parties agreed to the court's suggestion to sever the insurance issues and expressly waived their right to a jury during the second phase. Blackburn's counsel later summarized the parties' agreement as a decision "to put all insurance issues of any kind whatsoever over for resolution by the Court in the future." County counsel concurred and noted that after the "first phase[]" of trial

---

[1] The settlement agreement was filed under seal in the trial court but never introduced at trial. On appeal, the County filed an opposed motion to unseal the settlement. In that motion, the County relies on authority discussing rule 2.550 of the California Rules of Court as applied to sealed documents ultimately considered by the trial court in adjudicating the merits of a dispute. A different analysis applies when the documents are not used by the trial court or are irrelevant to the issues. (*Mercury Interactive Corp. v. Klein* (2007) 158 Cal.App.4th 60, 89–95; *Overstock.com, Inc. v. Goldman Sachs, Inc.* (2014) 231 Cal.App.4th 471, 497–500.) Here, the trial court did not admit the settlement agreement at the second phase of trial because it determined it could not consider the issue of coverage. Similarly, the settlement agreement itself is not relevant to the issues on appeal. Accordingly, we deny the motion to unseal. The parties will likely seek to admit the settlement agreement at the second phase of trial on remand and dispute its relevance. Thus, any renewed motion to unseal is best considered by the trial court at that juncture on remand.

6

before the jury, "we won't be getting judgments entered or anything at this phase. And that won't happen until the second phase of the trial is concluded." Both attorneys indicated that they did not plan to mention any issues regarding insurance to the jury.

At the first phase trial, the jury heard extensive testimony about the alleged damage to the building caused by the County when it vacated. Blackburn opined that before the County vacated, the building was worth between $5.8 and $6 million. He further opined that due to the damage to the building, it was worth only $4.2 million after the County vacated.

Blackburn also sought lost rent, totaling almost $700,000, on the basis that the County's damage to the property required him to leave the building vacant for repairs before signing a lease with a new tenant. Additionally, an expert testified about the cost to complete those repairs, which totaled approximately $350,000.

In its closing argument, the County argued that the leases permitted the County to remove any alterations it made to the building. The County further argued that Blackburn did not incur any damages caused by the County's actions in removing alterations or damaging the property when it moved out because the building was old and worn down and any new tenant, including the actual new tenant, would require a complete remodel of the building.

In its verdict, the jury found the County breached both leases but appeared to have largely accepted the County's argument. The jury awarded a total of $65,863, only a fraction of the damages sought by Blackburn.[2]

---

[2]  As we will discuss, after the verdict was entered, the parties and the court recognized that the jury awarded damages for the repair costs of the elevator plus an alarm control panel worth $100.

Thereafter, the parties submitted extensive briefing on the insurance issues to be tried during the second phase of trial. The County argued that under the language of the leases, Blackburn could not recover any damages from the County for repairs that were covered by his insurance policies. Alternatively, the County argued that applying the collateral source rule to avoid a double recovery required the trial court to reduce the jury's award of damages with an offset in the amount of Blackburn's settlement payment from his insurer. In response, Blackburn argued in a "Motion for Judgment on the Pleadings and/or Motion for Nonsuit On Defendant County's Unpled Affirmative Defenses" that the County could not raise these claims because it failed to allege them as affirmative defenses in its answer.

The trial court agreed with Blackburn. It found that any issues regarding insurance were "[n]ew matter" that must be pled as an affirmative defense and because the answer did not plead those defenses, the court refused to consider evidence regarding insurance and instead granted Blackburn's motion for judgment on the pleadings. The trial court also denied the County's request for leave to amend its complaint.

Thereafter, and as discussed in more detail in a subsequent section of this opinion, the trial court granted Blackburn's motion for attorney fees and awarded $461,497 in fees.

The County and Blackburn both appealed from the judgment and the order granting the motion for attorney fees.[3]

---

[3] Blackburn also appealed from the order granting his motion for attorney fees and an order denying his motion for prejudgment interest. He does not raise any issues regarding these orders on appeal and we therefore treat the appeal as abandoned.

DISCUSSION

I.     *The Jury's Verdict Is Supported by the Evidence*

Before reaching its challenges to the second phase of the trial, the County contends the jury's award of $65,863 in damages is not supported by substantial evidence.  As the parties agree, we review the jury's award of damages under the substantial evidence standard of review.  (See, e.g., *Bermudez v. Ciolek* (2015) 237 Cal.App.4th 1311, 1324.)

The County asserts that the bulk of the jury's award was comprised of the repair costs for the elevator and argues that the evidence does not establish that the County was responsible for the damage to the elevator.  In response, Blackburn argues that the County is improperly assuming the jury's award focused on the elevator and not his other claims for damages.  Although we agree with Blackburn that the County may not simply assume the jury awarded damages primarily related to the elevator, our review of the record supports the County's general assertion that the evidence establishes that the jury did so.

At trial, Blackburn relied on an expert witness to substantiate the damages resulting from the County's alleged destruction of the building.  That expert testified that he reviewed Blackburn's records and provided a detailed listing of the cost of repair of various items, with a total of approximately $350,000.  The expert testified that the cost to repair the elevator was $65,763.  Blackburn also claimed he was entitled to an award of $696,300 in lost rental income.

The jury awarded Blackburn a total of $65,863.  Thereafter, the parties and the court quickly recognized the jury awarded damages for the elevator

9

($65,763) plus $100 in other damages.[4]  In a posttrial motion, Blackburn conceded that "[i]t is evident from the amount of the award that the jury found County responsible for damaging the elevator."  Blackburn's counsel explained at a hearing that when he saw the jury's verdict, he "knew immediately what had happened.  They had awarded money for the . . . elevator, they hadn't given us one dime for loss of use. . . . And I also saw immediately as I sat here and looked at this verdict, I said, oh, my god, they've awarded another $100.00 and nobody knows why."  The trial court also acknowledged at a hearing that "the elevator is the lion's share of what the plaintiff received."

Now, on appeal, Blackburn asserts that the County improperly asks this court to rely on an unfounded assumption that the jury's award of damages arose from the elevator repair costs.  Blackburn states that "[i]f the court cannot make this assumption, which it cannot, and there is evidence to support the verdict generally, then [the] County's appeal must fail and all the successive arguments flowing from this assumption become irrelevant."

Where, as here, the form of a verdict renders it impossible to determine the precise basis for the jury's findings, the verdict will stand on appeal if the evidence supports it on any one sufficient claim.  (See, e.g., *Tavaglione v. Billings* (1993) 4 Cal.4th 1150, 1157; *Henderson v. Harnischfeger Corp.* (1974) 12 Cal.3d 663, 673.)  Here, there is no dispute that the verdict form itself does not reveal the basis for the jury's award of damages.  Thus, if the jury's award of damages is supported by substantial evidence regarding *any* of Blackburn's specific claims, we may not reverse the judgment simply by

---

4    The County asserts the $100 was for a fire system control panel taken by the County that an expert testified would cost $100 to replace and does not challenge the sufficiency of the evidence to support the award of $100.

10

concluding the claim relating to the elevator is not supported by substantial evidence.

However, we need not assume the jury's award is based on the elevator because, as Blackburn fails to acknowledge, the evidence introduced at trial is insufficient to support an award of $65,863 on any other theory. As discussed above, the only evidence regarding damages was the expert witness testimony, which was premised on precise amounts of damages for specific items. We see nothing in the record to support a theory on which the jury's award could be justifiably premised on these alternative theories of damages, either in full or in some reasonable discounted proportion, based on any evidence at trial. If we were to assume the jury disregarded the expert witness's testimony regarding the actual costs of repair and instead awarded $65,863 based on pure speculation, we would have to conclude the jury's award is not supported by substantial evidence. (*Ferguson v. Lieff, Cabraser, Heimann & Bernstein* (2003) 30 Cal.4th 1037, 1048 [" '[D]amages may not be based upon sheer speculation or surmise.' "].)

Accordingly, because it appears incontrovertible that, aside from the $100 not challenged by the County, the jury's award of damages arises from the elevator, our focus on appeal is determining whether sufficient evidence supports the jury's award of damages premised on the elevator repair costs.

Turning to the merits, the County admits that it was "undisputed at trial that the elevator stopped working while the County was moving out of the building when the motor that operates the elevator door burned out." The County, however, contends that insufficient evidence supports the conclusion that any act by the County or its agents *caused* the elevator damage. We disagree.

11

An employee of the moving company hired by the County to move furniture out of the building testified that the movers used the elevator once in the morning to move a cart and furniture dollies upstairs to prepare for the move. He testified that after they used the elevator that one time, the elevator door never closed and the elevator stopped working. That employee did not personally observe the elevator when it stopped working and no direct witness testified at trial. At most, the employee claimed that he was unaware of anybody that worked for the moving company damaging the elevator or using it in a way that would lead to damage.

Offering a somewhat different version of events, a County employee observed the movers using the elevator multiple times to load furniture and that rather than using a key to lock the elevator door in an open position, "they had someone at the door to make sure it kept open or it would open."

An elevator repairperson who examined the elevator after it was damaged determined that the electric controls that interface with the door motor had drawn excessive electrical current and melted down. He testified that this may occur if the elevator doors were "stalled" or held open.[5]

The jury was instructed that as the lessee, the County was required to "use ordinary care" and repair any damage occasioned by its "want of ordinary care."[6] In other words, the jury was instructed that the County was liable for the elevator repair costs if its negligence caused the elevator

_____

[5]    On appeal, the parties dispute whether the trial court excluded an opinion offered by the repairperson that the damage was caused by an "abuse of the equipment" on the basis that the expert was relaying case-specific hearsay as the basis for his opinion. We need not settle this dispute because we conclude the evidence was sufficient to support the jury's verdict regardless of whether this specific opinion was admitted at trial.

[6]    As we will discuss, the County asserts this instruction was improper.

damage. (See, e.g., *Hinckley v. La Mesa R.V. Center, Inc.* (1984) 158 Cal.App.3d 630, 637 [defining negligence as the failure to use ordinary care].) The jury's verdict in favor of Blackburn demonstrates that the jury concluded that the elevator was damaged by the County's negligence.

"When a civil appeal challenges findings of fact, the appellate court's power begins and ends with a determination of whether there is any substantial evidence—contradicted or uncontradicted—to support the trial court findings. [Citation.] We must therefore view the evidence in the light most favorable to the prevailing party, giving it the benefit of every reasonable inference and resolving all conflicts in its favor." (*Schmidt v. Superior Court* (2020) 44 Cal.App.5th 570, 582.) Under this deferential standard of review, we accept all evidence supporting the jury's verdict, completely disregard all contrary evidence, and draw all reasonable inferences supporting the verdict. (*Id.* at p. 581.)

The evidence at trial supports the conclusion that while using the elevator, the moving company hired by the County stationed an employee at the elevator door "to make sure it kept open" as they loaded furniture. A moving company employee admitted although he did not personally observe the moment when the elevator stopped working, the door stopped functioning while in the use of the moving company. An expert elevator repairperson testified that he personally observed that the elevator control panel had melted down after drawing excessive current, which could occur when elevator doors are held open.

Based on this evidence, the jury could reasonably infer that the actions of the County or its agents caused the elevator damage. Although there was no direct evidence establishing the negligence of the County, the expert's testimony that the elevator damage was caused by improperly holding the

13

door open or causing it to repeatedly open and close was sufficient evidence to support an inference that the County or its agents failed to use ordinary care in using the elevator while moving furniture.

As the County notes, the jury was not instructed under a theory of res ipsa loquitor and the burden did not shift to the County to rebut a presumption that it damaged the elevator simply because the elevator was under its control at the time it stopped working.  This, however, does not mean that the jury could not reasonably conclude that the County negligently damaged the elevator.

Similarly, the County's reliance on other evidence suggesting the elevator may have simply stopped working because it was old and worn down does not permit a reversal of the judgment.  Under the substantial evidence standard of review, "[w]e do not review the evidence to see if there is substantial evidence to support the losing party's version of events, but only to see if substantial evidence exists to support the verdict in favor of the prevailing party." (*Pope v. Babick* (2014) 229 Cal.App.4th 1238, 1245.) Although the jury could have followed the County's evidence, it instead determined that the County caused the elevator damage.  Based on the evidence presented at trial, this finding is supported by substantial evidence.

II.     *The Plain Language of the Leases Requires the Trial Court to Determine Whether the Damage Was Covered by Blackburn's Insurance*

Next, the County contends that even if the verdict from the first phase of trial is supported by substantial evidence, the damages award is inconsistent with the plain language of the leases.  We agree.

" 'The rules governing the role of the court in interpreting a written instrument are well established.  The interpretation of a contract is a judicial function. [Citation.] In engaging in this function, the trial court "give[s] effect

14

to the mutual intention of the parties as it existed" at the time the contract was executed. [Citation.] Ordinarily, the objective intent of the contracting parties is a legal question determined solely by reference to the contract's terms.' " (*Brown v. Goldstein* (2019) 34 Cal.App.5th 418, 432.)

" 'It is . . . solely a judicial function to interpret a written instrument unless the interpretation turns upon the credibility of extrinsic evidence. Accordingly, "[a]n appellate court is not bound by a construction of the contract based solely upon the terms of the written instrument without the aid of evidence [citations], where there is no conflict in the evidence [citations], or a determination has been made upon incompetent evidence." ' " (*City of Manhattan Beach v. Superior Court* (1996) 13 Cal.4th 232, 238.)

Here, neither party relied on extrinsic evidence to aid in interpretation of the leases. Accordingly, we independently review the plain language of the leases to determine the intent of the parties.

Two portions of the leases are directly relevant to determine the scope of the parties' respective duties under the lease to maintain and repair the building. First, Blackburn primarily relies on a section of the first-floor lease that requires the County to "deliver possession of the Premises to Lessor in the same condition it enjoyed in the beginning of this Lease, or as altered, ordinary wear and tear excepted." This provision, however, is found in an article of the lease entitled "Improvements and Alterations."

As discussed *ante*, the jury's finding that the County breached the leases and the award of damages focused almost exclusively on the elevator repair costs. There is no dispute that the elevator was not an improvement or alteration added by the County, but rather was the original elevator that was in place before the County began its tenancy. Therefore, the requirement that the County "deliver possession of the Premises . . . in the

15

same condition it enjoyed in the beginning of the Lease," which applied to changes related to improvements and alterations, is not directly applicable to the elevator. (See, e.g., *California Union Square L.P. v. Saks & Co. LLC* (2021) 71 Cal.App.5th 136, 141 ["We consider the contract as a whole and interpret the language in context, rather than interpret a provision in isolation."].) If a more specific and applicable provision applies, it will control over this provision related specifically to alterations. (*Kashmiri v. Regents of University of California* (2007) 156 Cal.App.4th 809, 834 ["Under well-established principles of contract interpretation, when a general and a particular provision are inconsistent, the particular and specific provision is paramount to the general provision."].)

Indeed, more specific provisions apply to the issue of elevator repair. Both leases specifically required Blackburn to maintain the elevator and ensure its continued operation. The leases also require Blackburn to "at all times and at [his] sole expense, keep the Premises, the Building and the Common Facilities in good order, condition and repair, such that the same are at all time in good and tenantable condition." The leases also clarify that Blackburn's repair obligation "shall include performing repair and maintenance services necessitated by negligent or intentional acts or omissions of County."

Critically, while the leases require Blackburn to make repairs, they also provide for reimbursement from the County when the repairs are necessitated by the County's negligent or intentional acts or omissions. This reimbursement obligation, however, is limited. The leases provide that "[n]otwithstanding any provision of the foregoing section to the contrary, County's obligation to reimburse Lessor for repairs necessitated by negligent or intentional acts or omissions of County shall not extend to . . . damage and

16

repairs covered under any insurance policy carried by Lessor in connection with the Premises, the Building, the Common Facilities or the Property."

Considered altogether, the leases impose an obligation on the County to reimburse Blackburn for any repairs necessitated by the County's negligent or intentional acts *only* when those repair costs are not covered by any insurance policy carried by Blackburn.[7] To establish his breach of contract claim, Blackburn had the burden of proving the County did not perform as required by the lease. (See, e.g., *Walsh v. West Valley Mission Community College Dist.* (1998) 66 Cal.App.4th 1532, 1545 (*Walsh*).) As applied in this specific circumstance, that burden requires Blackburn to demonstrate that the elevator repair costs were not covered by any insurance policy.[8]

The County contends the jury erred in finding that the County failed to perform by damaging the elevator and not paying the repair costs. According to the County, this error was caused by the jury instruction informing the jury that "the hirer of a thing must repair all deteriorations or injuries thereto occasioned by his want of ordinary care." As the County correctly notes, although that duty is set forth in Civil Code section 1929, that section

---

[7] The County raises additional issues regarding the precise method in which Blackburn sought reimbursement from the County without obtaining written approval. The leases, however, do not require written approval for "emergency" repairs if Blackburn performs such work "immediately." In its closing argument, the County argued the elevator repairs were not an emergency repair made immediately, but, by finding in favor of Blackburn, the jury necessarily rejected it. The County fails to establish that the jury's verdict is not supported by substantial evidence in this regard.

[8] Blackburn suggests the County bears the burden to establish coverage by suggesting the issue is related to reducing damages. However, the issue of coverage is central to the issue of whether the County breached the lease. In that regard, Blackburn bears the burden of establishing each element of his own cause of action. (*Walsh, supra*, 66 Cal.App.4th at p. 1545.)

does not apply when inconsistent with the express language of a contract. (Civ. Code, § 3268; see also *Continental Mfg. Corp. v. Underwriters at Lloyds London* (1960) 185 Cal.App.2d 545, 549–550 [section 1929 applies only "[i]n the absence of a contractual provision to the contrary"], abrogated on different grounds as recognized in *CAZA Drilling (California), Inc. v. TEG Oil & Gas U.S.A., Inc.* (2006) 142 Cal.App.4th 453, 466–467.)

We see no error in the jury instructions or by the jury in reaching its verdict on the limited issues presented to the jury. As discussed *ante*, the parties agreed to sever any issues regarding insurance to the second phase of trial. In effect, this severance split Blackburn's breach of contract cause of action with the element of breach being split in two: in the first phase, the jury was limited to considering whether the County damaged the building and, in the second phase, the trial court was to consider whether the resulting repair costs were covered by insurance. The jury instructions were shaped by this severance because the parties agreed the jury would not consider any issues related to insurance.

When the issue of insurance is excised from the leases, the County *did* have a duty to reimburse Blackburn for any repairs necessitated by the County's own negligent or intentional acts or omissions and the jury was appropriately instructed on this portion of the element of breach. Although the severance of issues resulted in a somewhat muddled verdict due to splitting the cause of action, both parties expressly agreed to this process and neither asserts error in this regard. Thus, to the extent the jury found that the County's negligent acts caused the elevator damage, as discussed in the previous section, it did not err in finding that the County had an obligation to reimburse Blackburn as framed by the limited issues tried in the first phase of the trial.

18

However, that does not end our inquiry. Following the jury's verdict, the second phase of the trial was intended to address the impact of any insurance issue on the claims raised by Blackburn. In its briefing filed in anticipation of that second phase, the County correctly argued that to establish a breach of the leases, Blackburn was required to establish that the elevator repair costs were not covered by any insurance policy. The trial court, however, did not allow this issue to be tried because it determined that the County failed to plead an affirmative defense raising this issue. We conclude this was erroneous.

It is undisputed that the only cause of action presented to the jury was Blackburn's claim for breach of contract. "To be entitled to damages for breach of contract, a plaintiff must plead and prove (1) a contract, (2) plaintiff's performance or excuse for nonperformance, (3) defendant's breach, and (4) damage to plaintiff." (*Walsh, supra*, 66 Cal.App.4th 1532, 1545.)

In his operative complaint, Blackburn alleges that he "performed all conditions, covenants, and promises required on [his] part to be performed in accordance with the terms and conditions of the lease agreements." He alleges the County breached the leases by (1) "not leaving the premises in a condition similar to the leasehold during its possession[;]" (2) "by damaging the leasehold[;]" and (3) by "removing property that belonged to [Blackburn]." He concludes that due to the County's breach, he has been damaged "in a sum according to proof."

As discussed *ante*, Blackburn's first allegation of a breach by the County was rejected by the jury. Instead, the jury's verdict focused on the County's actions that damaged the elevator and the removal of an item valued at $100, which is not contested by the County on appeal. Thus, we

19

focus only on the allegation that the County breached the leases by damaging the building, specifically the elevator, which resulted in recoverable damages.

In its answer, the County generally denied all the allegations. "The filing of a general denial denies in one sentence all the allegations of the complaint. [Citations.] In the case of a complaint for breach of contract, a general denial denies that there is a contract, that the plaintiff performed or had an excuse for nonperformance, that the defendant did not perform, or that the plaintiff was damaged. A general denial allows the denying party the opportunity to present evidence to refute the allegations in the complaint." (*Walsh*, *supra*, 66 Cal.App.4th at p. 1545.) Distinctly, "[a] defense in the nature of 'yes, the allegations are true, but . . .' is not put in issue by the denial." (*FPI Development Inc. v. Nakashima* (1991) 231 Cal.App.3d 367, 383.)

Thus, the County's general denial of Blackburn's complaint put in issue the material allegations of the complaint that were essential to Blackburn's breach of contract cause of action. (*Advantec Group, Inc. v. Edwin's Plumbing Co., Inc.* (2007) 153 Cal.App.4th 621, 627 (*Advantec Group*).) This necessarily includes the allegation that the County breached the leases. As we have discussed, the County breached the leases by damaging the elevator and failing to reimburse Blackburn for repairs *only* if the repair costs were not covered by Blackburn's insurance coverage.

Blackburn was required to present evidence regarding that breach to establish a right to recover and, under its general denial, the County " 'may urge any defense tending to show that the plaintiff has no right to recover or no right to recover to the extent that he or she claims.' " (*Advantec Group, supra,* 153 Cal.App.4th at p. 627.) Thus, the County was not required to plead an affirmative defense to assert that Blackburn could not establish a

20

right to recover any repair costs covered by an insurance policy or to present its own evidence showing that Blackburn could not establish his claim. Such a defense would be in the form of a simple denial of the allegation that the County breached the leases. In finding otherwise, the trial court improperly denied the County the opportunity afforded by its general denial to argue in the second phase of trial that Blackburn could not establish a breach of the leases because such a breach occurred only if the repair costs were not covered by insurance.

This error prevented the introduction of any evidence of insurance coverage in the second phase of the trial: as Blackburn asserts, no evidence of his settlement with the insurance company or any evidence regarding insurance coverage was ever admitted. The County now suggests that this court may decide the issue of coverage on appeal, but we conclude the record is insufficiently developed on the issue of coverage for us to decide the issue on appeal. (See, e.g., *Carmel Development Company, Inc. v. Anderson* (2020) 48 Cal.App.5th 492, 521 [factual determinations should be considered by trial court on remand]; *MMM Holdings, Inc. v. Reich* (2018) 21 Cal.App.5th 167, 187 [factual questions and disputes should be resolved in trial court].) Such an issue is properly considered in the trial court, not in the first instance on appeal.

On remand, the issue of insurance coverage may be tried by the court in a second phase of the trial. If the trial court concludes that Blackburn cannot establish that the elevator repair costs were not covered by insurance, then he will have failed to establish his breach of contract claim beyond the claim relating to the one hundred dollars of replacement costs conceded by the County.

III.     *The County's Claim for an Insurance Offset*

The County also contends that regardless of the language of the leases, it is entitled to an offset to avoid a double recovery for Blackburn due to the settlement of his bad faith claim against his insurer.  In its minute order on the second phase of the trial, the court barred this claim, finding that the County was required to raise it as an affirmative defense and failed to do so.  The County now relies on a decision of this court, *McMillin Companies, LLC v. American Safety Indemnity Co.* (2015) 233 Cal.App.4th 518 (*McMillan*), to argue it could assert this issue without alleging an affirmative defense.[9]

In essence, the County argues that to the extent Blackburn's insurance policies covered the damages that the jury also awarded to Blackburn in this action against the County, he is not entitled to a double recovery and the collateral source rule should apply to provide the County with an offset to the damages award.

We need not decide whether the County was required to plead this issue as an affirmative defense.  The claim for an offset is entirely duplicative of the County's claim that the leases permitted Blackburn to seek reimbursement from the County for repair costs only if those costs were not covered by insurance.  In other words, as we have already discussed, if insurance coverage exists for the repair costs alleged at trial, Blackburn will be unable to establish that the County breached the lease when it refused to reimburse Blackburn for those same costs.  In the absence of a breach of the leases, there is no need for a potential offset of damages.

_____

9      The County asks us to take judicial notice of certain documents in the appellate record of *McMillan*.  We decline to take judicial notice because they are not relevant to our consideration of the issues raised on appeal.  (See *Hill v. San Jose Family Housing Partners, LLC* (2011) 198 Cal.App.4th 764, 770.)

22

If, on the other hand, the trial court determines that the repair costs were *not* covered by insurance in the second phase of trial, that finding would mean that the settlement proceeds would not provide an offset to the County. Thus, resolution of the underlying issue as it relates to whether the County breached the contract necessarily determines the merit of the County's claim for an offset such that the issue of a post-verdict offset becomes moot.

IV.    *Blackburn's Appeal*

Blackburn also appealed from the judgment, but offers only a conditional limited argument regarding one jury instruction on the measure of damages.[10]  It is not entirely clear that Blackburn intends for this court to consider his claim: he asserts that "the jury's verdict and the resulting Judgment should remain undisturbed."  We do not offer advisory opinions on the correctness of jury instructions untethered from a contention that the judgment should be reversed.  Although Blackburn asks this court to consider his claim of error if we reverse the judgment on any basis, his claim of error relates only to the first phase of trial before the jury.  As we have discussed, we see no error with the jury's verdict in that first phase and it is not clear whether Blackburn would assert his claim of error as the sole basis for reversing and remanding for a complete new trial.

_____

[10]    In a motion to strike Blackburn's reply brief on his cross-appeal, the County asserts Blackburn improperly raises additional arguments in his reply brief and, on this basis, seeks sanctions.  As Blackburn asserts in an opposition to the motion to strike, the arguments contained in the reply brief do not appear entirely unrelated to his cross-appeal, but rather were included in the reply brief due to the lack of a clear delineation of the issues he raises on appeal from the issues raised in the County's appeal.  Seeing no unreasonable violation of the Rules of Court and in the interest of judicial economy, we deny the motion to strike and request for sanctions but will disregard the portions of the reply brief that are not relevant to Blackburn's cross-appeal.  (*Hawran v. Hixson* (2012) 209 Cal.App.4th 256, 268.)

Regardless, we see no prejudicial error. Blackburn primarily asserts that the jury should have been instructed that it could award either the reduction of property value or the cost of repair, *not* the lesser of those two amounts. However, he cites no authority supporting such a position.[11] In a California Supreme Court case cited by Blackburn, *Herzog v. Grosso* (1953) 41 Cal.2d 219, the court recognized that *if evidence is presented* regarding both the depreciation in property value and the cost of restoration, the proper measure of damages is whichever is less. (*Id.* at p. 226.) The court noted this principle by relying on an earlier Supreme Court decision, *Green v. General Petroleum Corp.* (1928) 205 Cal. 328, which expressly held that "[i]f the cost of repairing the injury . . . and otherwise restoring the premises to their original condition, amounts to less than the value of the property prior to the injury, such cost is the proper measure of damages; and if the cost of restoration will exceed such value, then the value of the property is the proper measure." (*Id.* at p. 336.) Although Blackburn expresses that such a rule "goes against base fairness" when applied to landlord-tenant disputes, we may not, and see no reason to, depart from Supreme Court precedent.

Next, Blackburn argues that he was not required to "prove repairs were actually made." As the County notes, the jury was not instructed in this regard. Blackburn offers no discussion or argument regarding this statement and we treat any argument as forfeited. (See, e.g., *Ewald v. Nationstar Mortgage, LLC* (13 Cal.App.5th 947, 948 ["We repeatedly have held that the

---

11      At most, Blackburn mentions Civil Code section 1951.2, but that section details remedies that apply when a lessee abandons a property *before* the end of a lease. (*Id.* at subd. (a).) There is no dispute that the County did not abandon the property before the end of the leases and, therefore, that section does not apply.

24

failure to provide legal authorities to support arguments forfeits contentions of error."].)

Finally, Blackburn asserts the jury was improperly instructed that to recover damages for lost rent, Blackburn must prove that he "would have earned rents but for County's breach." This argument arises from the given jury instruction, CACI 352, which informed the jury that to recover for lost rents, Blackburn "must prove that it is reasonably certain [he] would have earned rents but for County's breach of contract." During trial, Blackburn asked the court to instead instruct the jury with CACI 3903N, which states: "[t]o recover damages for lost profits, [Blackburn] must prove it is reasonably certain [he] would have earned profits but for [County]'s conduct."

As the trial court noted, the two instructions "pretty much say the same thing." Blackburn's counsel agreed, noting that there was not a "significant difference" between the two instructions.

Now, on appeal, Blackburn suggests it was error to require him to prove that it was reasonably certain he would have earned rents, but his alternative instruction would have similarly instructed the jury. Blackburn cannot now attack the verdict on the basis that the trial court instructed the jury in a manner that, although not precisely the same, was substantively identical to Blackburn's requested jury instruction. (See, e.g., *Stevens v. Owens-Corning Fiberglas Corp.* (1996) 49 Cal.App.4th 1645, 1653.)

Moreover, Blackburn fails to establish any error. At most, he relies on *Iverson v. Spang Industries, Inc.* (1975) 45 Cal.App.3d 303 (*Iverson*), which held that a lessor may recover the cost of repairs *and* "[a]n allowance . . . for the loss of rental during the reasonable time required to make such repairs or restoration." (*Id.* at p. 308.) Relying on this statement of law, Blackburn suggests "the jury should have been instructed that [Blackburn] was entitled

25

to lost profits or rents for the time it took to repair the property, without having to prove a tenant was prevented from paying rents."

Setting aside that Blackburn did not request any such instruction, he offers no authority establishing such a measure of damages. In *Iverson*, the case cited by Blackburn, the court noted that a landlord may recover the "*loss of rental*" during any repair period. (*Iverson*, *supra*, at p. 308, italics added.) It follows that to the extent there was no loss of rental because no new tenant intended to occupy the building, Blackburn could not recover any damages premised on a speculative claim to rent. Nothing cited by Blackburn suggests otherwise.

For a breach of contract, the proper measure of damages "is the amount which will compensate the party aggrieved for all the detriment proximately cause thereby, or which, in the ordinary course of things, would be likely to result therefrom." (Civ. Code, § 3300.) As applied here, if Blackburn would not have been able to rent his building after the County vacated it, then any breach by the County did not cause Blackburn to suffer any lost rent, which was not likely to result from the County's breach.

We see no error by the trial court in instructing the jury and Blackburn fails to establish a right to a full retrial of the first phase of trial. Thus, we conclude the only reversible error committed by the trial court occurred in the second phase of trial and the first phase of trial was free from prejudicial error. When an issue may be separately tried without confusion or uncertainty, an appellate court may issue a limited reversal and remand the matter to be retried on a limited issue. (*Torres v. Automobile Club of So. California* (1997) 15 Cal.4th 771, 776.) Seeing no prejudice from a limited remand, we conclude it is appropriate to remand with directions to the trial

26

court to conduct the second phase of trial in accordance with the principles discussed in this opinion.

V. *The Leases Did Not Include an Attorney Fees Provision*

The County also challenges the trial court's order granting Blackburn's motion for attorney fees. As an initial matter, our reversal of the underlying judgment alone necessitates a reversal of the resultant attorney fee award because the trial court's determination of which party is the prevailing party may need to be reconsidered on remand. (See, e.g., *Zagami, Inc. v. James A. Crone, Inc.* (2008) 160 Cal.App.4th 1083, 1097 [limited reversal of judgment requires new consideration on remand of the prevailing party issue].) Regardless, as the issue of whether the leases allow for the recovery of attorney fees will likely arise again, we will consider the merits of the County's argument.

On appeal, the County does not dispute that Blackburn was the prevailing party, but rather focuses on whether the trial court correctly interpreted the leases to find they permitted the recovery of attorney fees. The County relies primarily on a decision of this court, *Alki Partners, LP v. DB Fund Services, LLC* (2016) 4 Cal.App.5th 574 (*Alki Partners*), which interpreted similar contractual provisions to those found in the leases. Following the persuasive reasoning of *Alki Partners*, we conclude the trial court erred in interpreting the leases.

1. *Additional Factual Background*

To support his claim for attorney fees, Blackburn relied on the indemnity provisions included in the leases, which are similar but not identical.

In Article 18, entitled "Indemnity," the second floor lease provides that the "County shall indemnify Lessor and hold it harmless from and against

27

any damages, losses or liabilities (collectively, a 'Claim'), to the extent arising from (i) any breach or default by County of its obligations under this Lease, or (ii) the negligence or willful misconduct of County or County's agents, invitees, employees or contractors.  County shall, at its expense and with counsel satisfactory to Lessor, defend Lessor in any action or proceeding arising from any Claim, provided, that County shall not defend such action or proceeding or bear the costs thereof in a suit involving the intentional misconduct or negligence of Lessor, or its employees, agents or contractors, or defects in the Premises or the Building."  The same indemnity provision requires Blackburn to "indemnify, defend and hold County harmless from and against any Claim (including attorneys' fees and other legal costs) incurred by County to the extent arising from (i) any breach or default by Lessor of its obligations under this Lease, or (ii) the negligence of willful misconduct of Lessor, Lessor's employees, agents or contractors."

In the first floor lease, under Article 21, entitled "Indemnity," section 21.2 requires the County to "defend and indemnify Lessor and hold it harmless from and against any Claims which arise solely from (i) any breach or default by County of its obligations under this Lease, or (ii) any act, omission or negligence of County or County's contractors, licensees, invitees, agents, servants or employees."  Conversely, Blackburn is required to "defend, indemnify, protect and hold County harmless from, any and all claims, demands, liability, judgments, awards, fines, mechanics' liens or other liens, losses, damages, expenses, charges or costs of any kind of character, including actual attorneys' fees and court costs (hereinafter collectively referred to as 'Claims'), arising from or in connection with, or caused by, directly or indirectly, (i) any breach or default by Lessor of its obligations under this Lease, (ii) any act, omission or negligence of Lessor or

28

any tenant of Lessor, or their respective contractors, licensees, invitees, agents, servants or employees, and (iii) any labor dispute involving Lessor, its employees, contractors or agents, including, without limitation, Claims caused by the concurrent negligent act or omission, whether active or passive, of County or its agents; provided, however, that Lessor shall have no obligation to defend or indemnify County from Claims caused solely by the negligent, willful or criminal act of County or its agents."

Following entry of judgment, Blackburn moved for an award of attorney fees by relying on these indemnity provisions. He argued that the broad language of the indemnity provisions applied to first-party direct claims.[12] He additionally claimed that based on the County's earlier assertions that the indemnity provisions applied, it was estopped from arguing otherwise in opposition to the motion for attorney fees. In total, Blackburn asked for an award of nearly $600,000 in fees and statutory costs.

The trial court granted the motion. To support its conclusion, the trial court relied primarily on *Hot Rods, LLC v. Northrop Grumman Sys. Corp.* (2015) 242 Cal.App.4th 1166 (*Hot Rods*). The court found that the language of the indemnity provisions was "broad and not limited to third party claims" such that Blackburn could seek direct indemnity from the County in the form of attorney fees in this action. The court concluded that Blackburn was the prevailing party, that the County was not judicially estopped from opposing the motion, and awarded a total of $496,757.31 in fees and costs.

---

[12] Blackburn asserted alternative grounds to support an award of attorney fees, but the trial court did not rely on those assertions to award fees and Blackburn does not raise them on appeal as an alternative basis to support the fee award. Accordingly, we need not consider them.

2.    *Analysis*

In its opposition to the motion for attorney fees and on appeal, the County relies on this court's decision in *Alki Partners*, *supra*, 4 Cal.App.5th 574, which involved the question of whether an indemnity provision similar to the leases' indemnity provisions supported an award of attorney fees. In *Alki Partners*, a prevailing party (Hedgeworks) in the lawsuit sought an award of attorney fees against the other signatory (Alki Partners) to an agreement that did not include an express attorney fee provision, but did include an indemnity provision. The indemnity provision stated that "[Alki Partners] shall indemnify [Hedgeworks] . . . against any and all costs, losses, claims, damages or liabilities, joint or several, including without limitation, reasonable attorneys' fees and disbursements, resulting in any way from the performance or non-performance of [Hedgeworks'] duties hereunder, except those resulting from the willful misconduct, gross negligence, fraud or dishonesty of [Hedgeworks] or [Hedgeworks'] reckless disregard of its obligations and duties hereunder, and in the case of criminal proceedings, unless [Hedgeworks] had reasonable cause to believe its actions unlawful . . . ." (*Ibid.*)

Our court explained that "[g]enerally, an indemnification provision allows one party to recover costs incurred defending actions by third parties, not attorney fees incurred in an action between the parties to the contract. [Citation.] Courts look to several indicators to distinguish third party indemnification provisions from provisions for the award of attorney fees incurred in litigation between the parties to the contract. The key indicator is an express reference to indemnification. A clause that contains the words 'indemnify' and 'hold harmless' generally obligates the indemnitor to reimburse the indemnitee for any damages the indemnitee becomes obligated

to pay third persons—that is, it relates to third party claims, not attorney fees incurred in a breach of contract action between the parties to the indemnity agreement itself." (*Alki Partners*, *supra*, 4 Cal.App.5th at p. 600.)

Similarly, language in an indemnity provision regarding indemnification for " ' "any cause or for any reason whatsoever" ' " or promising to " 'indemnify' the other from ' "any, all, and every claim" which arises out of 'the performance of the contract' " [citation] deals *only* with third party claims, and cannot support an award of attorney fees in an action for breach of contract between the parties to the agreement." (*Alki Partners*, *supra*, 4 Cal.App.5th at p. 601, italics added; quoting *Building Maintenance Service Co. v. AIL Systems, Inc.* (1997) 55 Cal.App.4th 1014, 1022 and *Myers Building Industries, Ltd. v. Interface Technology, Inc.* (1993) 13 Cal.App.4th 949, 974.)

This court directly addressed the decision in *Hot Rods* and found it to be distinguishable. As we explained, the indemnity provision in *Hot Rods* expressly applied to " 'any claim or demand by any Person' " *including* claims " 'based in contract' " and defined the term " 'Person' " broadly to include direct claims brought by either party to the contract. (*Alki Partners*, *supra*, 4 Cal.App.5th at p. 605.) Additionally, the provision in *Hot Rods* regarding notice of claims suggested that while indemnity for "environment actions" was limited to third party claims, indemnity for other claims extended to direct claims. (*Id*. at p. 605.)

Here, the indemnity provisions contained none of the specific terms relied upon by the court in *Hot Rods* to find that the provision at issue in that case covered direct claims between the parties for breach of contract. Instead, the plain language of the leases, requiring the parties to indemnify, defend, and hold harmless the other party against any and all claims, was

31

intended to deal only with third-party claims. (*Myers Building Industries, Ltd. v. Interface Technology, Inc.*, *supra*, 13 Cal.App.4th at p. 974.) Unlike other provisions which courts have found to apply to first party claims for attorney fees, like the provision in *Zalkind v. Ceradyne, Inc.* (2011) 194 Cal.App.4th 1010, the leases contain no additional language expressly suggesting that the indemnity provision is *not* limited to third party claims. (See *id.* at pp. 1027–1028 [clause extending indemnity to cover attorney fees incurred " 'whether or not they have arisen' " from third party claims applies to direct actions between the parties].) Nothing in the indemnity provisions specifically addressed the issue of recovery of attorney fees in actions on the contract between the parties or expressly permitted recovery of attorney fees in actions to enforce the contract.

"To find a right to attorney fees in a direct action under an ordinary indemnity provision, as here, would invest every agreement containing a standard third party indemnity clause with a prevailing party attorney fee clause. This is particularly inappropriate because section 1717, subdivision (a), which governs the award of contractual attorney fees, applies only when the contract 'specifically provides that attorney's fees and costs, which are incurred to enforce that contract, shall be awarded either to one of the parties or to the prevailing party . . . .' The indemnity clause here does not 'specifically' refer either to actions to enforce the contract or to the prevailing party. Rather, it is a third party indemnity clause. The court erred in construing it otherwise." (*Alki Partners*, *supra*, 4 Cal.App.5th at p. 606.)

Alternatively, Blackburn argues that even if the leases do not provide for the recovery of attorney fees by the prevailing party in this action, the County is estopped from arguing otherwise based on its prayer for fees in its

answer and its representations in the trial court that the indemnification provisions covered direct claims.

This court rejected a similar contention in *R.W.L. Enterprises v. Oldcastle, Inc.* (2017) 17 Cal.App.5th 1019, 1035–1036, concluding that "a party's mere assertion of the right to recover fees does not estop it from challenging a fee award or vest the other party with the right to recoup attorney fees if it prevails." Other decisions have recognized that judicial estoppel does not apply against a losing party that sought attorney fees if that party would not have been legally entitled to such fees had it prevailed. (*M. Perez Co., Inc. v. Base Camp Condominiums Assn. No. One* (2003) 111 Cal.App.4th 456, 470; *Blickman Turkus, LP v. MF Downtown Sunnyvale, LLC* (2008) 162 Cal.App.4th 858, 897–899 & fn. 12.) As the County concedes on appeal, if it had prevailed at trial, it would likewise not have been legally entitled to recover its fees.

Thus, we conclude that the correct interpretation of the leases precludes a recovery of attorney fees by the prevailing party in a breach of contract action between the parties and neither party is estopped from making that argument. Because the trial court erred in concluding otherwise, we must reverse the order awarding attorney fees.

## DISPOSITION

The judgment is partially reversed and remanded with instructions to conduct a new second phase of trial on the issue of insurance coverage. In all other respects, the judgment is affirmed. The order granting the motion for attorney fees is reversed.

HUFFMAN, Acting P. J.

WE CONCUR:

HALLER, J.

DO, J.